65b 639
35ap 69

## JAMES CAMPBELL vs. TIMOTHY CAMPBELL.

Although an agreement by parol, to pay for services in land is void, and the person rendering the services may sue for and recover what such services are reasonably worth, yet this general rule is not without qualifications and exceptions.

The agreement is not corrupt, and therefore void. It is void only as to the land. That part of the agreement cannot be enforced, and hence services which were rendered with a view to compensation would be left uncompensated unless the law implied an agreement to pay, for them, what they were reasonably worth.

When the contract is to pay in land, for services, the party agreeing to convey must either have put it out of his power to do so, or refused to convey on tender to him of a deed.

In an action to recover for personal services, the referee found that after the plaintiff came of age, he and his father (the defendant) agreed that the plaintiff should remain at home and work for the defendant, on his farm, and should be paid therefor by he and his brother having the farm, at the defendant's death. He further found that the parties made a new agreement whereby the plaintiff should remain and work on the farm as long as the defendant lived, and that he and his brother should have the farm at the defendant's death, they to support their mother and pay certain legacies. Also that services were rendered by the plaintiff's wife, under and as part of said agreements, and that the defendant never requested her services, or received them, outside of said agreements.

*Held*, 1. That treating the agreement as an agreement to convey land in payment of services rendered, the value of the services could not be recovered for until the defendant, the vendor, was put in default.

2. That the plaintiff was bound to go on and perform his contract, until the death of the defendant, and if the latter should not have devised the farm in conformity with the agreement, then the plaintiff could recover the value of his services.

3. That the plaintiff was not at liberty, because his services were to be paid for in land, to cease to labor for the defendant, in his lifetime, and to recover for the services theretofore rendered.

4. That if the defendant, during his life, should put it out of his power to perform, then, doubtless, from that time, the contract would be rescinded, and the plaintiff entitled to recover.

5. That the action could not be maintained, for another reason, viz., because the services were rendered in expectation of a provision to be made in the defendant's will, for the plaintiff, and that they were not to be paid for during the defendant's life. That for services so rendered, no recovery could be had during the defendant's life.

6. That the finding in reference to the services of the plaintiff's wife was conclusive that the defendant understood that both she and her husband were rendering services to be paid, not in money in his lifetime, but by means of the property after his death.

APPEAL, by the defendant, from a judgment entered upon the report of a referee.

The action was brought to recover the value of services rendered by the plaintiff and his wife, and for money received by the defendant of the plaintiff. The claim was for services from 1843 to 1862, but the referee found only for the value of the services rendered from 1856 to 1862, the action being commenced in the latter year.

*C. D. Adams*, for the appellant.

*A. J. Mereness*, for the respondent.

*By the Court*, MULLIN, J.  On the facts found by the referee the judgment cannot be sustained. Those findings are, in substance, that after the plaintiff came of age, he agreed with the defendant, his father, to remain at home and work on the farm, and the defendant promised that he would pay the plaintiff therefor, and would give him a share of his farm. Under this arrangement the plaintiff remained with, and worked for the defendant, from February, 1843, till March, 1859.

In April, 1860, the plaintiff again resumed work for the defendant, under the promise and arrangement that he should work on the farm until the defendant's death, when the plaintiff and his brother should have the farm, and that the plaintiff should be paid for his work. The referee further found that after the plaintiff came of age he and his father agreed that the plaintiff should remain at home and work for the defendant on the farm, *and should be paid therefor by he and his brother having the farm at the defendant's death.*

It was further found that in the fall of 1859, and spring of 1860, the parties made a new agreement whereby the plaintiff should remain and work on the farm as long as the defendant lived, and that he and his brother should have the farm at the defendant's death, they to

Campbell *v.* Campbell.

support their mother and pay certain legacies to other members of the family.

It was further found that the services of the plaintiff's wife were rendered under, and as part of said agreements, and each of them respectively, and that the defendant never requested her services, or received them outside of said agreements, respectively.

The referee ordered judgment for the plaintiff for the balance of his services from the first of May, 1856, to the 24th of December, of the same year; also for labor in August, 1857, and again in 1861.

It will be seen that the first finding as to the arrangement made when the plaintiff came of age, is inconsistent with the second finding on the same point. By the first, the defendant agreed not only to give the plaintiff one-half of the farm, but to pay him for his services; by the second, the plaintiff was to receive his pay by having one-half the farm at the death of his father. The second finding is no doubt the correct one. It is the one which would naturally be made. The difficulties and misunderstandings between the parties most obviously arose from fears on the plaintiff's part that his father might not by his will give him his share of the farm. While it is doubtless true that on repeated occasions the defendant told the plaintiff he should be paid, and he would not cheat him, yet all these promises and assurances related to payment by way of a devise of the farm.

As to the labor done in and after the spring of 1861, the first and second findings are wholly inconsistent, and the last finding on that subject is the correct one. The agreement, as first found, was that the plaintiff should be paid the value of his labor, and on the death of his father have half the farm in addition, thus leaving an unmarried daughter utterly destitute, and a son without a dollar in acknowledgment of the relationship between him and his father.

Again, the last finding, in reference to the services of the plaintiff's wife, is conclusive that the defendant understood that both she and her husband were rendering services to be paid, not in money in his lifetime, but by means of the property after his death.

I lay out of view, therefore, in my examination of the legal questions, the finding that there was a promise to pay, otherwise than by a devise of the farm.

The plaintiff's counsel insists that the agreements found by the referee are void by the statute of frauds, and therefore the plaintiff may sue at once and recover for the services rendered under the void agreement. It is doubtless true that an agreement by parol to pay for services in land is void, and that the person rendering the services may sue for and recover what such services are reasonably worth. This general rule is not, however, without qualifications and exceptions. The agreement is not corrupt, and therefore void. It is void only as to the land. That part of the agreement cannot be enforced, and hence services which were rendered with a view to compensation would be left uncompensated unless the law implied an agreement to pay for them what they were reasonably worth. Again, when the contract is to pay in land; for services, the party agreeing to convey must either have put it out of his power to do so, or refused to convey on tender to him of a deed. This important and most reasonable and just modification of the general rule was enunciated by Bronson, J., in *Abbott* v. *Draper*, (4 *Denio*, 51.) In that case Abbott sued Draper in a justice's court, for goods sold and delivered, and on the money counts. On the trial, it appeared that the defendant had agreed to sell and convey to the plaintiff a strip of land for the sum of $60, to be paid in goods and money. The money was paid, and the goods were to be delivered when called for. An agreement was drawn but not signed. The plaintiff went into possession of the land and delivered part of the goods.

The defendant had judgment, which was affirmed in the common pleas, and error was brought to the Supreme Court. Bronson, J., after holding that the plaintiff could not recover for the consideration paid, until he had surrendered possession and demanded the money and the value of the goods, proceeded to say: "But the difficulty lies still deeper than this. So long as the vendor is not in default, but is ready to perform the contract on his part, I see no principle on which the vendee can recall the payments which he has made under the agreement. * * * When the vendor refuses to go on with the contract, or has parted with his title so that he cannot perform, he is then in the wrong; and having himself put an end to the contract, there is no longer any consideration for the payments which have been made under it; and the law will imply a promise to restore the money. But how can the law imply a promise to restore the money so long as the vendor is not in default? The payment was a voluntary one, made with full knowledge of all the facts. Every time a payment was made and received, the parties virtually said, although the law will not enforce this contract we will go on and carry it into effect. The money is not received as a loan, but as a payment; and so long as the vendor is able and willing to perform the contract on his part, he holds the money as owner, and not as a debtor. The consideration upon which the money was paid has not failed, and there is nothing from which a promise to repay can be implied."

Treating the agreement in this case as an agreement to convey land in payment of services rendered, the value of the services cannot be recovered for until the defendant, the vendor, is put in default. The referee has not found any default, and from the nature of the case none could be found. He was doubtless of the opinion that because the services were to be paid for in land the plaintiff was at liberty to cease to labor for the

defendant, and to recover for the services theretofore rendered. This is not the law. If the case of *Abbott* v. *Draper* is law, the plaintiff was bound to go on and perform his contract until the death of the defendant, and if the latter should not have devised the farm in conformity with the agreement, then the plaintiff could recover the value of his services. If the defendant, during his life, should put it out of his power to perform, then, doubtless, from that time the contract would be rescinded and the plaintiff entitled to recover. In other words, the agreement to labor is valid and binding so long as it has a consideration to support it; and it has such consideration until the defendant has either put it out of his power to perform his part, or at his death the property, either by will or otherwise, passes to some person other than the plaintiff. The only case cited by the defendant's counsel apparently in conflict with these views is *Link* v. *Sherman*, (25 *Barb.* 433.) In that case the plaintiff agreed with the defendant's testatrix to live with and take care of her during her life, and at her death to have all her property. The plaintiff did live with her until her death. By her will the testatrix bequeathed all her property, except $200, to others. The $200 was given to the plaintiff. The action was brought to recover the value of the plaintiff's services, and it was held the agreement to pay in land was valid, and the plaintiff was entitled to recover. It will be seen that this case decides nothing inconsistent with *Abbott* v. *Draper*. The action was not brought till after the death of Mrs. Wager, the testatrix, and hence not until the plaintiff had fully performed the agreement on his part. Mrs. Wager had bequeathed her property to others, and the plaintiff received from her no compensation for his services. (*Jacobson* v. *Ex'rs of La Grange*, 3 *John.* 199. *Mastin* v. *Wright's adm'rs*, 13 *Wend.* 460. *Quackenbush* v. *Ehle*, 5 *Barb.* 469.)

There is still another reason why this action cannot

Campbell *v.* Campbell.

be maintained. The services were rendered in expectation of a provision to be made in the defendant's will, for the plaintiff, and not to be paid for during the defendant's life. For services so rendered no recovery can be had during the defendant's life. The case of *Patterson* v. *Patterson*, (13 *John.* 379,) is decisive on this point. In that case the plaintiff was son of the defendant, and lived with and worked for his father several years after he came of age. During the time the plaintiff was thus living with his father, the latter told the plaintiff that he intended to reward him well; that he was old, and the plaintiff must continue to live with him as long as he lived, and he would reward him well, and that he should have the farm, paying legacies to the other children. The defendant, by his will, gave his farm to his children, the plaintiff included, subject to a life estate in the mother, and gave the plaintiff a legacy of $750, in full satisfaction of his servics. The action was for the plaintiff's services, brought against his father. A referee to whom the case was referred reported in favor of the plaintiff, and a motion was made to set the report aside. The court held the action was prematurely brought, and could not be maintained during the life of the father. The court say it is evident the services were rendered in contemplation of compensation, and the presumption was that the father would, by his will, provide such compensation; if he did not, then the plaintiff could recover, but not till then.

·I can perceive no distinction between the case cited and the case in hand. The statement of the father as to what he would do for the son was the evidence of the contract between them. It was wholly immaterial whether the parties formally met and entered into an agreement what each should do, or whether from the acts or declarations of the parties the law implies an agreement between them. In either case the rights of the parties rest on contract.

Campbell *v.* Campbell.

When parties agree, the one to work for the other during life, and to receive compensation after the death of such other, it is just that the right to recover should not attach during the life of the party, unless such party has, during his life, put it out of his power to make any adequate provision by will or otherwise for the payment of such services.

I am of the opinion that the plaintiff cannot recover for work and labor, either of himself or his wife, in this action.

It is possible that the plaintiff may be entitled to recover for the money lent, in this suit. But as it is possible the plaintiff may, on another trial, make a case which will entitle him to recover for services, it is better that the whole case be retried. Unless the case is changed, I am of opinion that there cannot be a recovery for the money paid on the mortgage, as it was obviously contemplated that such payment was made for his own benefit if he finally obtained the land. If he fails in that, then he will be entitled to such amount and interest.

The judgment must be reversed, and a new trial ordered; costs to abide the event. The order of reference must also be vacated.

[Onondaga General Term, January 2, 1866. *Bacon, Morgan* and *Mullin,* Justices.]