CHRISTINA GRANT *vs.* CATHARINE GRANT, ADMINIS-
TRATRIX.

Hartford Dist., Oct. T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE,
FENN and BALDWIN, Js.

An oral promise to leave one's property by will to another in consideration of the latter's companionship and society, is within the statute of frauds if the property of the promisor consists, at his death, of real estate wholly, or in part; and therefore cannot be specifically enforced by a court of equity.

Nor will the fact that the promisee has acted upon and complied with the terms of the promise relieve the case from the operation of the statute, upon the ground of part performance.

Moreover, in order to warrant the specific enforcement of a contract by a court of equity, the contract, if otherwise valid, must be certain, equal, just and fair in all its provisions, and founded upon a valuable, as distinguished from a merely good or moral consideration.

But if the promisee has rendered services to the promisor, in reliance upon and as a consideration for said promise, an action upon a *quantum meruit* may be maintained against the personal representatives of the promisor, in which the value of the services, but not the value of the property owned by the decedent at his death, may be recovered.

In order, however, to maintain such action, the plaintiff, prior to. the institution of the suit, must have presented such a claim to the administratrix or other representative of the decedent, as required by § 581 of the General Statutes. Such presentation is essential and is a condition precedent to a recovery against a solvent estate; and a complaint which fails to allege such presentation is defective.

In the present case, which came before this court upon reservation for advice, the complaint alleged the oral promise of the defendant's intestate, his failure to perform the same and the plaintiff's acceptance of, and reliance upon, said promise; but wholly failed to aver the presentation to the defendant of any claim against the estate for services rendered. Held, that upon the complaint as it stood judgment must be advised for the defendant; unless the plaintiff could, by proper amendment in the Superior Court, undertake to aver and prove the due presentation of a proper claim against the estate to the defendant as administratrix, prior to the institution of this action.

In this state acts of part performance are sufficient to relieve an oral contract from the operation of the statute of frauds, provided they are such as clearly refer to some contract in relation to the subject matter in dispute; the terms of which may then be established by parol evidence.

[Submitted on briefs October 3d—decided December 13th, 1893.]

ACTION for the specific enforcement of an oral contract alleged to have been made with the plaintiff by the defendant's intestate, and such remedy failing, then for $5,000, damages; brought to the Superior Court in Litchfield County.

The case was heard by a committee who found and reported the facts, and the Superior Court, (*Fenn, J.,*) having accepted the report and found the facts therein contained to be true, reserved the case for the advice of this court. The case is fully stated in the opinion.

*Webster & O'Neill,* for the plaintiff.

1. The authorities are numerous that an agreement to make a certain disposition of property by will, may be enforced against the estate of a decedent by a court of equity. *Johnson* v. *Hubbell,* 10 N. J. Eq., 332; *Van Duyne* v. *Vree-*

*land*, 12 N. J. Eq., 149; *Schitt* v. *Methodist Society*, 41 N. J. Eq., 115; *Davison* v. *Davison*, 13 N. J. Eq., 246; *Rhodes* v. *Rhodes*, 3 Sand. Ch., 279; *Stephens* v. *Reynolds*, 6 N. Y., 459; *Shakespeare* v. *Markham*, 10 Hun, 311; *Parsell* v. *Stryker*, 41 N. Y., 480: *Wright* v. *Tinsley*, 30 Mo., 389; *Gupton* v. *Gupton*, 47 Mo., 37; *Sutton* v. *Hayden*, 62 Mo., 101; *Shumaker* v. *Schmidt*, 44 Ala., 454; *Bolman* v. *Overall*, 80 Ala., 451; *Logan* v. *McGuinness*, 12 Pa. St., 27; *Taylor* v. *Mitchell*, 87 Pa. St., 518; *Maddox* v. *Rowe*, 23 Ga., 431; *Mundorff* v. *Kilbourn*, 4 Md., 459; *Frisbie* v. *Parkhurst*, 29 Md., 58; *Wright* v. *Wright*, 31 Mich., 380; *Watson* v. *Mahan*, 20 Ind., 223; *Rivers* v. *Rivers*, 3 Desau., 195; *Izard* v. *Middleton*, 1 Desau., 116; 1 Story Eq. Jur., (12th ed.,) §§ 785–6; Waterman on Specific Performance, § 41; Schouler on Wills, § 454; 3 Parsons on Contracts, (7th ed.,) §§ 406–7; *Dowd* v. *Tucker*, 41 Conn., 193; *Scutt's Appeal*, 46 Conn., 38; *Haussman* v. *Burnham*, 59 Conn., 117; *Wainwright* v. *Talcott*, 60 Conn., 43; *Starkey's Appeal*, 61 Conn., 199.

2. Performance of the agreement on the plaintiff's part takes the case out of the operation of the statute of frauds. See the following cases among those already cited. *Johnson* v. *Hubbell*; *Van Duyne* v. *Vreeland*; *Davison* v. *Davison*; *Mundorff* v. *Kilbourn*; *Rhodes* v. *Rhodes*; *Izard* v. *Middleton*; *Gupton* v. *Gupton*; *Sutton* v. *Hayden*. These cases last cited all affirm the doctrine as applied to agreements to bequeath or devise property by will. See also: *Haussman* v. *Burnham*, 59 Conn., 117; *Wainwright* v. *Talcott*, 60 Conn., 43.

3. Specific performance will be decreed where the damages afforded at law are inadequate. In *Rhodes* v. *Rhodes*, above cited, it is said that services may sometimes be estimated and their value liquidated in money, so as measurably to make the promisee whole upon the promisor's rescission of the contract. But in a case where the services rendered are of such a character that it is impossible to estimate their value to the promisor by any pecuniary standard, and where it is evident that he did not intend to measure them by any such standard, it is out of the power of any court, after the performance of

the services, to restore the promisee to the situation in which he was before the contract was made, or to compensate him in damages. Such a case is clearly within the rule which governs courts of equity in carrying parol agreements into effect, where possession was taken of landed property or money is laid out in improvements upon land which the testator agreed to devise in consideration of care and maintenance during life.

4. Specific performance will be decreed where there is an impossibility of ascertaining damages. In addition to the cases cited above, see the following: *Sullivan* v. *Tuck*, 1 Md. Ch., 29; *Waters* v. *Howard*, 1 Md. Ch., 112; *Filney* v. *Aiken*, 1 Grant's Cas. 88.

5. Specific performance will be decreed where one party has performed and non-performance by the other operates as a fraud upon the one performing. *Johnson* v. *Hubbell*, 10 N. J. Eq., 332; *Wainwright* v. *Talcott*, 60 Conn., 43.

In *Starkey's Appeal*, 61 Conn., 203, 204, the court plainly indicates that an equitable action for specific performance would probably have been sustained in that case if it had been brought.

*Gideon H. Welch*, for the defendant:

1. The chancery powers of a court cannot be invoked to reform wills. 1 Story Equity Jurisprudence, 13th ed., § 177; 2 Pomeroy's Equity Jurisprudence, 2d ed., § 871; *Sturgis* v. *Work*, 122 Ind., 134; *Sherwood* v. *Sherwood*, 45 Wis. 357; *Chambers* v. *Watson*, 56 Iowa, 676; *Mellish* v. *Mellish*, 4 Ves., 45. *A fortiori* courts of chancery cannot construct wills. 1 Story Equity Jurisprudence, §§ 105ª, 170; Smith's Principles of Equity, 196; *Buckell* v. *Blenkhorn*, 5 Hare, 131; *Tollet* v. *Tollet*, 2 P. Wm., 489. Testamentary disposition of property is required by our statute to be in writing. Smith's Principles of Equity, 52; 1 Perry on Trusts, § 92; *Avery* v. *Chappel*, 6 Conn., 270; *Cripin* v. *Winkleman*, 57 Iowa, 523; *Wallace* v. *Long*, 105 Ind., 522; *Frost* v. *Frost*, 33 Vt., 646; *Warriner* v. *Rogers*, 16 Eq., 340, 353; *Johnson* v. *Ball*, 5 De G.

& Sm., 85. A statute that prescribes that a thing should be done in a particular way carries with it an implied prohibition against doing it in any other way. *New Haven* v. *Whitney*, 36 Conn., 373; Broom's Legal Maxims, 7th ed., 664.

The plaintiff, in her first claim in the complaint asks for a decree which has no foundation in the reported facts in this case. The decree prayed for, if granted, would be virtually constructing a will for the intestate, or perhaps, more technically speaking, substituting a mandate of the court for a will, containing provisions which there is nothing to show he ever contemplated making. How can the enforcement of the decree asked for be made practicable? In following the law governing the distribution of estates of deceased persons should the widow be treated as childless or not? To assume that intestate died childless would be a violation of the alleged promises of the deceased. To assume that the plaintiff was a child of the deceased would be equally repugnant to the facts, as she was a "stranger to the blood" and had never been adopted by him in the forms required by statutes.

The second claim of the plaintiff cannot be granted in that she asks for a decree for specific performance of the alleged promises of the deceased, and the passage of such a decree would be an ineffectual attempt to deprive the widow of her statutory right of dower in the real estate of her husband.

A contract upon which specific performance is sought must be certain, definite, clear and so precise in its terms that neither party can reasonably misunderstand it. Parties cannot ask courts to frame contracts in their behalf which they have neglected to make for themselves. The enforcement of the contract must be practicable and it must be based on a valuable consideration. 3 Pomeroy's Equity Jurisprudence, 2d ed., § 1405; Fry on Specific Performance, 3d ed., 317; Bispham's Principles of Equity, 251; *Platt* v. *Stonington Savings Bank*, 46 Conn., 476; *Quinn* v. *Roath*, 37 Conn., 24; *Patterson* v. *Bloomer*, 35 Conn., 57; *Dickinson* v. *Glenney*, 27 Conn., 104; *Meeker* v. *Meeker*, 16 Conn., 403; *Studer* v. *Seyer*, 69 Geo., 125; *Frost* v. *Tarr*, 53 Ind., 392; *Wright* v.

*Wright*, 31 Mich., 380; *Carlisle* v. *Fleming*, 1 Harr., 421; *Mundorff* v. *Howard*, 4 Md., 459; *Shakespeare* v. *Markham*, 72 N. Y., 400; *Colson* v. *Thompson*, 2 Wheat., 336. This court has never countenanced such a proceeding as this, for specific performance, on like evidence. Cases in which the circumstances were quite similar have several times been before this court, but it has never been even hinted that an action for specific performance could be maintained in any of them. *Reed* v. *Copeland*, 50 Conn., 472; *Lee's Appeal*, 53 Conn., 363; *Starkey's Appeal*, 61 Conn., 199.

2. The third claim of the plaintiff, for damages, in case she shall not be entitled to the equitable relief prayed for, cannot be successfully maintained. Damages concern legal, not equitable jurisdiction. 1 Pomeroy's Equity Juris., § 178; *Doan* v. *Thompson*, 111 Mass., 270. The facts found as to the value of the services of the plaintiff are immaterial and irrelevant. They are not responsive to, or in substantiation of, any claim in the complaint. The claim, to make the evidence pertinent should have been on a *quantum meruit* to recover the value of the services. 3 Pomeroy's Equity Jurisprudence, § 1410, cases cited in note; *Wallace* v. *Long*, 105 Ind., 522; *Shakespeare* v. *Markham*, 10 Hun, 311; *Cuff* v. *Dorland*, 55 Barb., 481. The committee finds the value of seven years' services of the plaintiff. The statute of limitations which we interpose against that finding is both a legal and equitable bar to a portion of that period of time. 2 Swift's Digest, top page 259; *Phalen* v. *Clark*, 19 Conn., 421; *Jeffrey* v. *Fitch*, 46 Conn., 605; *Budington* v. *Munson*, 33 Conn., 481; *Gorham* v. *Bulkley*, 49 Conn., 91. And an objection can be taken in this case without pleading the statute. *Haskell* v. *Bailey*, 22 Conn., 574. The Practice Act has made no change in the application of the statute. *Baker* v. *Lee*, 52 Conn., 145.

We say that if this court shall advise the court below to award as damages to the plaintiff any portion of the sum found by the committee as due under the evidence of services rendered, that no interest can be computed thereon.

Authorities on compound interest: *Camp* v. *Bates*, 11

Conn., 487; *Rose* v. *Bridgeport*, 17 Conn., 247; *Clement's Appeal*, 49 Conn., 519. Authorities on simple interest: *Wells* v. *Abernethy*, 5 Conn., 222; *Jones* v. *Mallory*, 22 Conn., 386; *Crosby* v. *Mason*, 32 Conn., 488; *Clark* v. *Clark*, 46 Conn., 586–590; *Guthrie* v. *Wheeler*, 51 Conn., 207.

FENN, J. The plaintiff, now twenty-three years of age, when about four, went to reside with William Grant of Torrington, and his wife, in consequence of a verbal promise made by Mr. Grant to her parents, that if they would let him adopt the child as his own, he would take her with him to his home, and as he and his wife had no children of their own, they would educate and maintain her; that he had some property, and when he died the child should have it, what there was left of it, just the same as if she were his own daughter. Immediately after she went to reside in the family Mr. Grant and his wife commenced calling her "Tiny Grant," by which name she has ever since continued to be known and called. Mr. and Mrs. Grant were always kind and affectionate towards her, treated her as their own daughter, clothed, maintained and educated her in the district school of the town, and did everything for her which kind and affectionate parents could or would do for their own daughter.

On the other hand, she was kind and affectionate towards them and did everything for them which a kind and affectionate daughter could or would do for her parents. After she arrived at a suitable age, she assisted Mrs. Grant about the house, washed the dishes, made the beds, did sweeping and house cleaning, according to her years, and ran errands as required. This she continued to do down to the date of Mr. Grant's death. On three or four occasions he was sick, and suffered on each of these occasions for several weeks. On these occasions she waited upon him, nursed and cared for him, and he refused to let any one else attend upon him. He stated to her that she would be well rewarded for what she had done for him and for his wife. "You remain with us, Tiny," said he, "and after I am gone, you will be well provided for; what I have left shall belong to you." These

remarks and others like them, he made a great many times to the plaintiff, to his wife, and to a number of his neighbors. In consequence of these promises made to her parents and to herself, the plaintiff was induced to remain with Mr. and Mrs. Grant as she did.

Mr. Grant died March 4th, 1893, leaving no children of his own, but a wife and sister survived him.    He died intestate, having never adopted the plaintiff in accordance with the laws of this State.    She had never requested such adoption, because she did not know or understand that any legal formalities were required, and expected that Mr. Grant would make the promised provision for her by will.    His property at the time of his death consisted of a little over twelve thousand dollars in all; of which about twelve hundred dollars was real estate.

The above facts, found by a committee are, though in greater detail, in substantial accordance with, and affirmance of, the allegations of the plaintiff's complaint against Mrs. Grant (the widow) and as administratrix of the decedent's estate.    Upon such recited facts, the claim of the plaintiff, as quoted from the brief in her behalf, was:—" If William Grant had made a will, devising and bequeathing all of his estate to this plaintiff, his widow would first be entitled to one half of the personal property, and to the use of one third of the real estate."    The plaintiff asks for a decree that the other half of the personal property shall be paid over to her ; and that the title to the real estate, subject to the widow's dower, shall be vested in her, or that a decree will be passed giving her an equivalent for these.

The committee, in addition to the facts above recited, also made the following finding:—" The plaintiff also asks me to find the value of her services to Mr. Grant while she remained in his family, for the purpose of obtaining judgment for the amount, in case she is not entitled to the equitable relief prayed for.    On this subject I find it impossible to place a pecuniary value on the plaintiff's affection and tenderness for Mr. and Mrs. Grant.    I find, however, that for the seven years next preceding Mr. Grant's death, on March 4th, 1893,

her services to Mr. Grant were and are reasonably worth, as a mere servant, twelve dollars per month, and that interest should be computed thereon, if the above facts will authorize it; and if it is legally and equitably right so to do, I find that this interest ought to be compounded annually."

From the foregoing statement it is manifest that the reservation of this case for advice, made by the Superior Court, presents for our consideration two questions: *First*, is the plaintiff, upon the facts found, entitled to the specific equitable relief prayed for? and, *second*, if not, is she entitled to recover damages in this action, and upon this complaint?

It seems to us that there are conclusive reasons why specific performance, as prayed for, cannot be granted. The alleged contract was wholly by parol, the consideration indivisible; it provided in effect that the plaintiff, upon the death of the defendant's intestate, should succeed to a child's share in all the property of said intestate; and that such property at his death, consisted of real, as well as personal estate. The contract, therefore, was entire. It applied equally to every part of the estate. It concerned an interest in lands, and was within the statute of frauds. *Shahan, Exr., et al.* v. *Swan,* 48 Ohio St., 25; *Donahue's Appeal,* 62 Conn., 370, 372; *Myers* v. *Schemp et al.,* 67 Ill., 469; *Pond* v. *Sheean et al.,* 132 Ill., 312, 323 ; *Clark* v. *Davidson,* 53 Wis., 317 ; *Ellis* v. *Cary, Admr.,* 74 Wis., 176; *Gould* v. *Mansfield et al.,* 103 Mass., 408.

In some of the cases, above cited, the alleged agreement, or promise, expressly called for succession to both real and personal property; and in one of them it appeared that real property was owned at the date of the contract. In other cases the promise did not so expressly embrace both, but was in general language as in the case before us; nor did it appear whether any real estate was owned at the date of the contract. Neither such express language, or such ownership has however, by any of the courts been regarded as controlling considerations; nor ought they to be. The mischief which the statute was intended to remedy—the setting up parol land titles—would occur equally in either case. And in

every case, in which the effect of the contract, if capable of enforcement, would be a transfer of land, and therefore in every case where such a result might at the time the contract was made, have been contemplated as its possible effect and afterwards found to be its necessary one, if the contract is enforced, such contract falls within the operation of the statute.

But the plaintiff, in the brief presented in her behalf, conceding that the oral contract was within the provisions of the statute of frauds, contends that the finding shows such performance upon her part as relieves the case from the operation of the statute. The adjudications upon the subject of what constitutes sufficient part performance of an oral contract to take it out of the statute are almost numberless. Though not in harmony, they appear to support one or the other of two rules; the stricter, requiring the acts of part performance to be referable to the contract set up, and to no other one, and the more liberal holding the acts sufficient if they are such as clearly refer to some contract in relation to the subject matter in dispute, the terms of which may then be established by parol. We have had occasion very recently to fully examine the subject, and have adopted the latter and more liberal rule. *Andrew* v. *Babcock*, 63 Conn., 109, 122.

But, applying the rule, do the acts stated clearly indicate a contract in relation to the subject matter in dispute? We think not. On this point we cannot do better than to quote and adopt the language of the court in the case before cited, of *Shahan, Exr., et al.* v. *Swan*, p. 39, where, in reference to very similar facts, the court said : " Acts of this character are not usually the offspring of contractual relations. Would the ordinary observer infer from them any contract whatever? Would they not, rather, be attributed to higher motives?" * * * " Whether these acts of alleged part performance be taken singly or collectively, they do not indicate that they were done in performance of any contract or agreement respecting property rights of any kind, but rather were manifestations of a benevolent and affectionate dispo-

sition on the part of a childless couple towards a gentle and affectionate child whose fate was placed in their keeping." So, also, in the case of *Pond* v. *Sheean et al.*, *supra*, a person having no children of his own, took an infant daughter of a relative of his wife, to raise as a member of his family, and promised orally, with his wife's consent, that if the child's father would permit her to become a member of his family and assume the name of her adopter, he would, on his death and that of his wife, give the child all the property he might own. The contract was fully performed by the child and her father. But the court held that a court of equity could not decree a specific performance of the parol agreement, saying that the case was clearly within the statute of frauds; that the contract was entire, and the plaintiff having never been put into possession of the real estate, the acts of part performance were not sufficient to relieve the case from the statute. So, also, in the Wisconsin case of *Ellis* v. *Cary*, *admr.*, *supra*, where the alleged agreement of the intestate was that if Mrs. Ellis, the plaintiff, his step-daughter, would keep the house of the deceased and take care of him during the residue of his life, he would devise and bequeath to her all his real and personal property, as compensation for such services. The plaintiff not only fully performed, but after the death of the testator she remained in possession of his real estate. But it was said that she was not put into possession under the void agreement, and that such possession had no necessary reference thereto ; and it was held that the case was not relieved from the operation of the statute.

But a further reason why such a contract as that in question cannot be specifically enforced, is that which is stated at great length in the opinion of the court in *Wallace* v. *Rappleye, et al.*, 103 Ill., 229. This was an attempt to establish a verbal contract, alleged to have been made by a putative father, to make his illegitimate child an heir. The court said : *first*, that " such claims are always dangerous, and when they rest on parol evidence they should be strictly scanned, especially when an attempt is made, under cover of a parol contract, to effect a distribution different from

that which the law makes." The court also held that a
specific performance of a verbal contract affecting real estate,
will not be decreed except upon due and conclusive proof
of its existence and terms, and that the contract must be
certain, equal and fair, founded upon a valuable, as distin-
guished from a merely good or moral consideration; and
that when so proven, it is not a matter of right, but of sound
discretion;—general equitable principles concerning the cor-
rectness of which there can be no question. The court in
the same case also says:—" The only significance of a con-
tract to make one an heir is in securing a right to property.
But what is the amount of property involved in such a con-
tract? How much intestate estate will be left to be inher-
ited? * * * The contract would be uncertain as to the
amount of property reached by it." Again, in *Woods* v.
*Evans*, 113 Ill., 186, it was held, that a contract by one hav-
ing at the time an estate of the value of $20,000, and a wife
living but no children, to take, maintain and educate an
orphan girl eleven years old, and, for her services until she
should attain the age of eighteen years, to leave and give
to her at his death a child's part of his estate, was not based
upon a sufficiently adequate consideration; that it was not
certain as to what was intended, and not fair and just in all
its provisions; that it was too uncertain as to the amount of
property to be reached by it, and that it should not be spe-
cifically enforced against the heirs of the party making the
same. See also, the cases of *Wall's Appeal*, 111 Pa. St.,
460; *Alderson* v. *Maddison*, L. R. 8 App. C. 467.

The case of *Wallace, Adm.*, v. *Long, Guardian*, 105 Ind.,
522, unlike the cases before cited, was an action at law, being
a complaint against an administrator, and based upon a claim
against the estate. The facts alleged were, in substance,
that a childless husband and wife, in consideration that a
young girl should live with them until the death of both, in
all respects as their own child, and render such service as
she was capable of doing, orally agreed to make her their
heir, and at their death, or at the death of the survivor, to
will her the entire estate of which they were possessed, which

in fact consisted, at the death of the survivor, of real estate, and also of personal estate exceeding fifty dollars in value. The claim was to recover the value of the estate, estimated at six thousand dollars. The case was tried to a jury, who returned a verdict for said sum. On appeal, the judgment upon such verdict was reversed, the court holding: *first*, that the agreement was within the statute of frauds; *second*, that performance on the part of the girl did not take it out of the statute; *third*, that where services have been performed in consideration of property to be conveyed, if the contract is not enforceable by reason of the statute of frauds, the action is not on the special contract for damages, but on a *quantum meruit* to recover the value of the services; *fourth*, in such a case the value of the services performed, and not the value of the property agreed to be conveyed, is the measure of damages; *fifth*, in estimating the value of the services regard should be paid to the situation of the parties, and the nature of the services required or performed. The court, in the opinion, fully considers all these propositions. We need not add further to what has already been said in reference to the first two, but will quote somewhat in regard to the others. " When the title to property, either real or personal, is to be acquired by purchase, the statute of frauds will operate upon and affect the contract in precisely the same manner, whether the consideration for the purchase is to be paid in services, money, or anything else. In either case, such a contract, being in parol and entirely executory, cannot be enforced by either party, and it may be doubted whether a contract which is within the statute so as to be incapable of specific enforcement, has sufficient validity to support an action for damages by either party, unless the contract was induced under, or its violation is involved in, some special circumstances of fraud or bad faith. *Barickman* v. *Kuykendall*, 6 Blackf. (Ind.), 21.; *Ballard* v. *Bond*, 32 Vt., 355; *McCracken* v. *McCracken*, 88 N. C., 272; *Bender* v. *Bender*, 37 Pa. St., 419. The most that can be recovered in such a case is the value of what may have been paid or performed by one party in reliance upon such a contract,

when the other refuses to perform. Reed Stat. of Frauds, sections 737, 761–2; *Day* v. *Wilson*, 83 Ind., 463 (43 Am. Rep., 76).

" Where, therefore, services have been performed, or money paid, in consideration of property to be conveyed, if the contract is not enforceable by reason of the statute of frauds, the action is not on the special contract, but, in the case of services performed, the action is on a *quantum meruit* to recover the value of the services. *Ham* v. *Goodrich*, 37 N. H., 185; *Emery* v. *Smith*, 46 N. H., 151: *Leslie* v. *Smith*, 32 Mich., 64 ; *Seymour* v. *Bennett*, 14 Mass., 266 ; 2 Reed, Stat. of Frauds, sections 622, 623, and cases cited in notes ; 2 Sutherland on Damages, 453. In such a case, the value of the services performed, and not the value of the property agreed to be conveyed, is the measure of damages." · It was also said, referring to the agreement: — " It does, however, serve to rebut any presumption which otherwise might have obtained, that the services rendered were to have been gratuitously performed, or that they were performed under the mere expectancy that the intestate would leave the plaintiff's ward a legacy. She is, therefore, entitled to recover the value of her services. *Jacobson* v. *Executors, etc.*, 3 Johns. 199 ; *Robinson* v. *Raynor*, 28 N. Y., 494 ; *Campbell* v. *Campbell*, 65 Barb., 639 ; *Reynolds* v. *Robinson*, 64 N. Y., 589 ; *Emery* v. *Smith*, 46 N. H., 151 ; *Sutton* v. *Rowley*, 44 Mich., 112 ; *Welch* v. *Lawson*, 32 Miss., 170 ; *Bender* v. *Bender*, 37 Pa. St., 419 ; *Alderson* v. *Maddison*, L. R. 8 App. Cases, 457 (35 Moak's Eng. Rep. 790) ; *Clark* v. *Davidson*, 53 Wis., 317 ; *Howard* v. *Brower*, 37 Ohio St., 402 ; Wood, Frauds, sections 221, 235. Many other cases might be cited which support and illustrate the conclusions reached, but those referred to are deemed sufficient. The value of the services is to be determined without any reference to the value of the estate of the intestate. But, in estimating the value of the services, regard should be paid to the situation of the parties, the nature of the service required, or performed. Allowance should be made, too, for the fact that under the circumstances, the presence and society of the plaintiff's

ward may have been of sufficient value to compensate for her education, clothing and support."

We have quoted from the above case, which has been expressly approved in the more recent and similar case of *Ellis* v. *Cary, Admr., supra,* (see, also, Am. St. Rep., vol. 17, p. 125,) so much at length, because the language used appears to us to present with great clearness and force, and supported by an abundant reference to authority, principles applicable to the questions under consideration, which have been already recognized in the decisions of this court; and to be in full accord with such decisions. *Watertown Eccl. Soc'y Appeal,* 46 Conn., 230: *Starkey's Appeal,* 61 Conn., 199; *Donahue's Appeal,* 62 Conn., 370.

But perhaps these principles, though apparent from the opinions in the cases just cited, are most clearly stated in *Wainwright* v. *Talcott,* 60 Conn., 43. That was an action to recover for money expended by the plaintiff in improvements on real estate owned in common by the plaintiff's wife and the defendant's testator, made under a promise of the latter that his interest in the property should be devised to the plaintiff's wife, and that she should have the benefit of the improvements. As there declared, the rule is this: Damages, in such a case, are not recoverable for the breach of an agreement, impossible to enforce, and unnecessary to allege; but on the ground of what, for want of a better name, is called a constructive fraud, which would be consummated unless the plaintiff was allowed to prove what induced her to alter her situation, if she did alter it, for the worse, and could upon such proof obtain fair compensation for the injury thereby occasioned to her. " The cause of action in such cases is not the refusal to perform a contract, or to keep a promise or engagement upon which another relied, but it is the consequent unjust infliction of loss or injury upon one party, and the consequent benefit and advantage resulting to the other, from the violation or breach of a faith and confidence which, under the circumstances, a court of equity deems to have been rightly reposed in him."

A claim for such damages is properly presentable to an

administrator, or to commissioners. Under the common law system of pleading, the action of *indebitatus assumpsit* would have been an appropriate form of remedy for recovery. The damages are capable of computation, since they are to be measured by the pecuniary loss and injury on the one side, and the pecuniary benefit and advantage on the other. Such a claim was presented in *Starkey's Appeal, supra.* And though one of the forms of double presentation there employed might seem to be a claim for damages for breach of contract to leave all the property and estate of the intestate to the plaintiff, by will, this court, in its opinion says that it was " evident that the commissioners considered that there was but one claim·for six thousand dollars, founded on personal services, and that they allowed." And in reference to such claim, it was, by the court, made a question whether evidence as to the value of the estate was admissible, and it was said: " That seems to be more remote than the other testimony ; but perhaps in connection with the testimony of Mrs. Rice, it was admissible, *not as giving a rule of damages,* but as having some tendency to show Mr. Brooks's appreciation of her services." And, finally, in that case, upon the question of the true rule of damages, the charge to the jury was approved, in which it was stated that : " When services are rendered by one person to another in pursuance of a mutual understanding and agreement between the parties that compensation for them should be made by will, and the party receiving the services dies without making the expected compensation, the party rendering the services is entitled to compensation out of the estate of the deceased as a creditor for the value of such services."

But can there be a recovery of damages in this action ? The complaint as it stands, is not adapted to such recovery. It contains no statement of any resulting loss or damage to the plaintiff, and none of services rendered, except that she nursed " the intestate and his wife, in their sickness, dutiful as a daughter ; " and no bill of particulars was filed. Since, however, the case comes before us on reservation, if it appeared probable the plaintiff was entitled to such relief, we

might suggest proper amendment, pursuant to the provisions of the rules of practice. 58 Conn., 568–9, §§ 2, 3; *Erichson* v. *Beach*, 40 Conn., 283; *Haussman* v. *Burnham*, 59 Conn., 117, 139; *Logiodice* v. *Gannon*, 60 Conn., 81, 85. But to this course, if advised, it is probable an insurmountable obstacle would exist. There is nothing in the complaint which indicates that any claim against the estate has ever been presented to the administratrix, as required by General Statutes, § 581. And unless the fact that it has been presented exists, and could therefore be stated, any amendment would fail to make a valid complaint, adapted to the recovery of a claim. Such presentation is essential, and a condition precedent to legal recovery against a solvent estate. The object of the statute making it requisite, is apparent. It is " to enable the administrator to perform his duties. * * * In the first instance the administrator must pass upon all claims against such estates. He is not presumed to know what they are, and in a great majority of cases he cannot know, until they are presented to him by the creditors." *Pike* v. *Thorp*, 44 Conn., 453. The law, therefore, has made it as essential to a claimant's right of recovery of a legal claim, in a higher court, against a solvent estate, that it should be first presented to the executor or administrator, and an opportunity given him to examine and pass upon it, and to allow or disallow it, as it is that such a claim against an estate represented insolvent, should be presented to the commissioners upon such estate, for their action.

There is another statute, General Statutes, § 583, which requires suit to be brought by a creditor of an estate, against an administrator, within four months after written notice of the disallowance of a claim. Otherwise it is barred. Both of these provisions have long been in existence in this state. Doubtless, prior to the passage of the Practice Act of 1879, a custom had grown up, to some extent, of treating both alike, as matters the failure to comply with which, should be set up in defense, under the general issue with notice. But there is a radical difference between the two provisions, the last being simply a statute of limitations. The practical

effect of this difference was clearly recognized in the rules and forms under the practice act. See P. A. Book, page 16, sec. 6, (58 Conn. 566, 567) which requires statutes of limitations to be specially pleaded; and same book, p. 72, Form 106, where a complaint against an administrator which contains (par. 10) the allegation of presentation of the claim to the administrator, and his refusal to pay the same.

But the question before us is not strictly one of pleading, or whether a complaint without such allegation of presentation would be good upon demurrer. The facts have been found by a committee, apparently with the utmost fullness; for certainly the finding contains considerable that is unimportant and immaterial. But there is no finding of presentation of any claim to the administratrix. The precise question, therefore, arises, which was presented and passed upon by this court in *Brown & Bros.* v. *Brown,* 56 Conn. 249, where an appeal having been taken in consequence of the refusal of the court below to set aside a nonsuit granted, the sole question presented and decided, was whether the plaintiff in its testimony in chief had produced sufficient evidence of presentation to constitute a *primâ facie* case. The distinction between the two statutes to which we have referred is clearly stated in the opinion, p. 252, the court saying: " The question whether the suit was brought within four months after notice of the rejection of the claim by the executors is one that does not arise in the case as it stands. It is wholly a matter of defense, and constituted no part of the plaintiff's case. We do not think it proper at this stage of the case to give the question any consideration."

But to all the foregoing, it may be added, that all the allegations of the complaint, and the relief prayed for therein, tend strongly in opposition to the idea of any presentation of any claim against the estate to the administratrix. The prayer of the plaintiff, upon the facts stated and found, as before recited, is:—" 1. That you will pass a decree that when said estate is settled, and the distributive share to be set to the widow is ascertained, the remainder of said estate shall be paid over to this plaintiff by the administratrix.

2. In other words, the plaintiff asks for a decree that the promises of the said William Grant shall be specifically performed, or rather, that the plaintiff shall be placed in as good condition as she would have been in if said promises had been performed. 3. In the event that the plaintiff shall not be entitled to the equitable decree prayed for, then she claims a judgment for damages for $5,000." Now it is clear that the first two of these paragraphs neither contain any demand for legal relief or for any claim against the estate upon which the administratrix could pass, allowing or disallowing the same; or upon which if, under the provisions of General Statutes, § 585, the administratrix, after the time limited for presenting claims, had procured the appointment of commissioners, such commissioners, although vested with powers both legal and equitable, could have decided. For even their equitable powers are limited to cases where the claims are those of creditors of the estate, entitled to payment out of the assets, which the plaintiff did not claim to be; but entitled to receive its remaining assets, after the payment of the debts and charges, alleged in the complaint not to exceed one thousand dollars; the expense of settling the estate, alleged not to exceed two hundred dollars; and the dower and distributive share of the widow. The powers which even commissioners could exercise must be such as the Superior Court, on appeal, could also exercise, through the instrumentality of a trial by jury—such a case as that presented in *Watertown Eccl. Soc'y Appeal, supra; Starkey's Appeal, supra;* and in *Corr's Appeal,* 62 Conn., 403, and cases cited.

And so far as the claim in the third paragraph of the demand for relief is concerned, it must be noticed, *first,* that it is not asked for absolutely, but only in the event that the plaintiff is held not entitled to what she has demanded absolutely. So that it can scarce be imagined that such alternative claim could have been presented, as the absolute one, to the administratrix. And, *second,* such claim for damages must be understood as being the equitable relief prayed for, in another form, which in the opinion of the pleader might

perhaps be held less objectionable (though we do not share such opinion) than the former; as, for instance, the conversion of the entire estate into money, subject to the widow's dower in the realty, and the payment over to the plaintiff of the residue, after discharge of the debts, charges, expenses, and setting out of the widow's portion, as aforesaid. Even if it be imagined that relief by way of damages for breach of contract was intended, it would amount to precisely the same thing. For, waiving the consideration already advanced, based upon the clear provisions of the statute of frauds, which would make such a contract of no legal validity, (*Donahue's Appeal, supra,*) it would be impossible to fix the amount of such damages, prior to the final completion of the settlement of the estate; and no jury could legitimately determine such amount, and no court, through the form of a judgment at law, as for a liquidated and definite sum, could grant the plaintiff such relief. It would only be through the more flexible and adaptable remedies pertaining to the equitable jurisdiction that the result sought could be attained. That the plaintiff, although including a demand for damages in the complaint, has not contemplated such recovery for a fixed sum, as damages, for breach of contract, is manifest; for not only is no claim therefor made in the brief presented to us in her behalf, but the committee, although making, as we have before stated, at her request, a finding of facts not based upon any allegations of the complaint, has nowhere made any such finding as would enable the court, even approximately, to fix the amount of any such judgment. The value of the real estate, and of the entire property, is indeed approximately found, but there is no statement or suggestion as to the clear estate which would remain after the payment of debts, charges and expenses; for which omission there can probably be no better reason than the one already given, that an accurate statement in regard to the matter, at the present time, would, by reason of necessary contingencies, be impracticable.

And, finally, notwithstanding the finding of the committee, as to the value of the plaintiff's services, made at her

request, the plaintiff, in her brief, has advanced no claim for any recovery of that character, and to that extent. The only relief which in such brief is asked for, is that quoted by us, in the early part of this opinion, and the ground upon which such relief is claimed is, that "specific performance will be decreed, where the damages afforded by law are inadequate," it being stated that, in this case, the services rendered were of such a character that it is impossible to estimate their value to the promisor by any pecuniary standard; and that it is evident that the intestate did not intend to measure them by any such standard, and that it was impossible to compensate the plaintiff in damages. And also upon the further grounds that "specific performance will be decreed where there is an impossibility of ascertaining damages," and where "one has performed, and nonperformance by the other operates as a fraud upon the one performing." It may, therefore, seem as if, in the consideration of the question as to whether the plaintiff, in this action, can recover damages (as based upon a claim, and by way of legal relief), we have performed a work of supererogation. We have, however, deemed it best to examine it, both on account of its intrinsic interest and because the case itself, upon the facts found by the committee, presents such strong features in favor of the right of the plaintiff to such compensation, as, consistent with the rules of law, may be awarded to her; which it may not yet be too late to obtain through proper presentation of a proper claim, if, as we assume, such claim has not been presented to the administratrix.

The case is remanded to the Superior Court, which court is advised that if the plaintiff will undertake to allege and prove a due presentation of a proper claim against the estate, to the administratrix, prior to the bringing of her action, the court in its discretion may allow the amendment, and such further amendment, or substituted complaint, and further hearing thereon, as in its judgment may be necessary to properly present the plaintiff's case; and thereupon render judgment in her favor for such sum, if any, as she shall, by said court, be found entitled to recover. But upon the

complaint as it now stands, and unless the same can be so amended, judgment must be rendered in favor of the defendant.

In this opinion the other judges concurred.