## WILLIAM A. M. WAINWRIGHT *vs.* ANNA E. TALCOTT, EXECUTRIX.

Hartford Dist., Oct. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS SEYMOUR and TORRANCE, Js.

In a suit of *W* against the executrix of *T* the complaint alleged that in *T*'s lifetime certain real estate occupied by the plaintiff was owned in common by *T* and the plaintiff's wife, who was his niece, and that *T* promised that she should have the property upon his death and the benefit of any improvements which the plaintiff might make upon it, and that in reliance upon this assurance the plaintiff expended large sums of money in the permanent improvement of the property, that *T* knew that the improvements were being made and that they were made in reliance upon this assurance, and that afterwards *T* by will left all his interest in the property to others, and had never in any way reimbursed the plaintiff for his expenditures; praying for both legal and equitable relief in damages. On a demurrer to the complaint it was held—

1. That if the complaint was to be regarded as seeking a recovery upon a parol promise to devise real estate, such promise would be within the statute of frauds and the complaint demurrable.

2. That it would also be demurrable if to be regarded as counting upon a promise of *T* to pay his part of the cost of the improvements, because presenting no consideration for such a promise.
3. But that the action was not founded upon any agreement of *T* to pay for a share of the improvements as such, but that the cause of action presented was the injury to the plaintiff from the conduct of *T* in inducing him to make the expenditures in the belief, founded upon *T's* promise, that he would devise his interest in the property to the plaintiff's wife.
4. That these facts constituted a constructive fraud for which the plaintiff could recover damages from *T's* estate.

Where a vendee of land has entered into possession under a contract of purchase not enforceable by reason of the statute of frauds, and in good faith has made valuable improvements thereon, and afterwards the vendor refused or was unable to convey, courts of equity have decreed specific performance on the ground that to allow the statute to be set up would enable the vendor to practice a fraud.

And the same principle is applied in cases of a parol promise to give lands, upon the faith of which possession is taken and improvements made, although there is no contract at all for the breach of which damages could be given; the decree being in such a case for compensation for the improvements.

The cause of action in such cases is not the refusal to perform a contract or keep a promise upon which another relied, but the unjust infliction of loss upon one party, with a consequent benefit to the other, from a violation of a confidence which under the circumstances a court of equity deems to have been rightly reposed.

The statute of frauds is just as binding on courts of equity as on courts of law, but if a refusal of one party to carry out a parol contract will work a fraud upon the other, equity will protect the latter against the injustice.

In such cases a party seeking the aid of a court of equity may always prove the parol agreement for the purpose of showing the fraud, whether it be actual or constructive.

[Argued October 10th, 1890—decided January 5th, 1891.]

ACTION to recover for money expended by the plaintiff in improvements on real estate owned in common by the plaintiff's wife and the defendant's testator, made under a promise of the latter that his interest in the property should be devised to the plaintiff's wife, and that she should have the benefit of the improvements; brought to the Superior Court in Hartford County. After a demurrer to certain counts of the complaint had been overruled, the case was tried upon the facts, on an issue closed to the court, before *Thayer, J.* Facts found, and judgment rendered for the defendant,

and appeal by the plaintiff.    The case is fully stated in the opinion.

*W. Hamersley,* for the appellant.

1. Evidence of Talcott's declarations to the plaintiff that he should devise his interest in the property to the plaintiff's wife and that she and her children would have the benefit of whatever improvements he made, should have been admitted by the court.   It went to prove the allegation of a promise to repay the money expended on his property.   His promise to confer a benefit on a third party inducing the expenditure by the plaintiff, is not merely a consideration for the money so expended for Talcott's benefit, but is equivalent to a promise to repay the plaintiff if the benefit promised is not conferred.   If, in such case, the benefit is not conferred, the law implies a promise to repay the plaintiff; just as truly as the law implies a promise to repay money received for a certain purpose and not applied to that purpose.   *Robinson* v. *Raynor,* 28 N. York, 494 ; *Martin* v. *Wright's Admrs.,* 13 Wend., 460 ; *Quackenbush* v. *Ehle,* 5 Barb., 469 ; *Jackson* v. *Exrs. of Le Grange,* 3 Johns., 199 ; *Bayliss* v. *Pricture,* 24 Wis., 651 ; *Moses* v. *Macferlan,* 2 Burr., 1005 ; *Bize* v. *Dickason,* 1 T. R., 285.   The statute of frauds has nothing to do with such a case.   Browne on Stat. of Frauds, § 124 ; *Smith* v. *Bradley,* 1 Root, 150.

2. The excluded evidence was admissible to show that Talcott so acted that the law treats his conduct as a fraud which makes his estate liable to pay damages.   The plaintiff expended money on Talcott's land.   He induced the plaintiff to spend this money by promising benefits to the plaintiff's wife and children, and retains the benefit of the plaintiff's expenditures after failure to execute his promise.   Equity treats such conduct as a fraud upon the plaintiff, entitling him to pecuniary damages.   *Johnson* v. *Hubbell,* 2 Stockt. Ch., 332 ; *Ayres* v. *French,* 41 Conn., 142 ; *Dowd* v. *Tucker,* id. 197.

3. It also went to show that Talcott knew of the improvements made by the plaintiff ; as co-tenant consented that

they should be made; and promised to pay his share of the expense, and induced the plaintiff to make the improvements by promises to secure the whole property to the plaintiff's wife and children. The law of contribution by co-tenants of real estate was first recognized in courts of equity. Courts of law under the influence of the old technical rules governing the ownership and occupancy of land refused all adequate remedy. Even so late as 1868, it was held in Massachusetts that an action at law would not lie to recover from a co-tenant his share of reasonable expense for necessary repairs. It is now, however, settled by the weight of authority that the law of contribution by co-tenants of real estate rests upon the same principle of natural justice that supports the law of contribution in other cases. Brandt on Suretyship, § 220; 2 Story Eq. Jur., §§ 1234, 1236, 7, 8; *Fowler* v. *Fowler*, 50 Conn., 256; *Swan* v. *Swan*, 8 Price, 518.

4. The testimony being relevant to the principal facts, it is not made inadmissible by the operation of the statute of frauds. It was relevant, not because it proved a parol agreement, but because it proved admissions of Talcott and facts relevant to the principal facts in a cause of action not founded upon the parol agreement. A parol agreement which is inadmissible as an agreement on which the action is founded, is clearly admissible to prove any relevant fact in actions not maintained upon the parol agreement. *Pearl St. Eccl. So.* v. *Imlay*, 23 Conn., 10; *King* v. *Woodruff*, id., 56; *Ryan* v. *Dayton*, 25 id., 188; *Clark* v. *Terry*, id., 395. But the statute of frauds does not properly apply to a promise to devise lands. The statute invalidates a parol agreement to *sell* lands. While an agreement to devise land or bequeath personal property may possibly be made under such circumstances and in such manner as to be in reality a contract for sale, yet a devise is not a conveyance any more than a bequest is a bill of sale; and an agreement to devise is not necessarily a contract for the sale of land any more than an agreement to bequeath is a contract for the sale of personal property.

5. The defendant's demurrer was properly overruled for the reasons given under the foregoing heads.

*C. E. Perkins*, with whom was *H. Cornwall*, for the appellee.

1. The statute of frauds provides that "no civil action shall be maintained upon any agreement for the sale of real estate, or any interest in or concerning it, * * * unless such agreement or some memorandum thereof be made in writing and signed by the party to be charged therewith or his agent." The plaintiff claims that a parol agreement to devise land does not come within this statute, because it is not "an agreement for the *sale* of real estate." Browne on the Statute of Frauds, § 263, says:—"An agreement to devise an interest in land, though founded on a precedent valuable consideration, is also within this section of the statute; and, as we shall see in the course of this chapter, the effect of the provision, as expounded and applied by the courts, is to render unavailing to the parties as the ground of a claim any contract, in whatever shape it may be put, by which either of them is to part with any interest in real estate." See also *Brewster* v. *McCall's Devisees*, 15 Conn., 290; *Marcy* v. *Marcy*, 32 id., 308; *Gould* v. *Mansfield*, 103 Mass., 408; *Parsell* v. *Stryker*, 41 N. York, 480; *Gooding* v. *Brown*, 35 Hun, 148; *Wallace* v. *Long*, 105 Ind., 522; *Demoss* v. *Robinson*, 46 Mich., 62; *Mundorff* v. *Kilbourn*, 4 Md., 459; *Ellis* v. *Cary*, 74 Wis., 176; *Madison* v. *Alderson*, L. R., 8 App. Cas., 467.

2. The plaintiff claims that the statute of frauds does not apply to this case, because he asks for equitable relief; but it is well settled that, as a general rule, the statute is applicable to proceedings in equity, as well as at law. Browne on Statute of Frauds, § 129. There are cases where equity will decree a specific performance of verbal contracts for the sale of lands; but this is not that case, nor does it come under any of the heads of equity jurisdiction. It is an action to recover a specific sum of money, which is shown in the bill of particulars, and no other specific relief is asked

for. Merely asking for equitable relief, if no facts are alleged showing an equitable cause of action, is immaterial.

3. The plaintiff also claims that the gist of the count is an implied promise, and that an implied promise to sue is not within the statute. But the statute says that no action shall be sustained on any agreement not in writing relating to lands. If there is here an agreement relating to the transfer of lands, which is not in writing, it cannot be the foundation of an action, and if there is no such valid agreement there is no foundation for any action at all. This case is like that of *Cook* v. *Doggett*, 2 Allen, 439, where the court says:—" The work was done or caused to be done by the plaintiff for his own benefit, on the faith that the defendant would convey the land agreeably to his oral agreement which the plaintiff must be supposed to have known he could not by law enforce."

4. The plaintiff also claims that the statute does not apply because it is alleged that Mrs. Talcott was the heir of John L. Talcott, and therefore this was not an agreement to sell land. It is not alleged that the plaintiff's children were his heirs, and as the promise is that the property should go to his wife and children, it could only be by will or deed. If an agreement to devise land is within the statute, it would seem that an agreement with his heir that the owner would not devise it to any one else, but that he should have it, would also be within it. The object of the statute is to require that all agreements as to the transfer of an interest in land shall be in writing.

5. The plaintiff seems to base his claim not so much on any contract, express or implied, or any well defined principle of law or equity, as on the idea that the building in question was a benefit to Mr. Talcott's land, and therefore the money expended on it should be repaid by him. The general principle is that where a person erects buildings on the land of another without any promise, express or implied, to pay for it, the owner is not obliged to repay the money so spent.

6. Even if the court erred in excluding this parol evidence,

no new trial should be granted, for the second count, which is the only one which was attempted to be proved, and the only one under which the evidence was offered, does not set up any cause of action. It alleges only a promise to the plaintiff that the land should go to the wife and children of the plaintiff after Mr. Talcott's death. There is no consideration alleged for the promise accruing at the time it was made, either from the plaintiff or his wife and children. It was therefore a mere voluntary promise of a gift, and it is unnecessary to cite authorities to show that such an agreement is void, nor that a void promise cannot be the foundation of an action.

TORRANCE, J. From the finding of facts in this case it appears that prior to 1870 a certain lot of land in Hartford was owned in common and undivided by John L. Talcott and Thomas, his brother, the former owning four fifths and the latter one fifth. Thomas died in 1870, and his interest in the land then descended to his daughter, now the wife of the plaintiff, subject to her mother's right of dower. John L. Talcott had no sister and Thomas was his only brother. He had no nephews, and no nieces save the wife of the plaintiff. John L. Talcott and the defendant, who is his executrix, intermarried in 1876, and he died in 1887. From 1870 down to the time of John's death, said real estate continued to be held in common by said parties in the manner stated.

The complaint contains four counts, but the third and fourth are practically the same. We deem it unnecessary to consider any of the counts save the second. That count sets out in substance that on July 1st, 1882, and on divers other days since, John L. Talcott assured and promised the plaintiff that upon his, John L. Talcott's, death, his interest in said real estate should go to the plaintiff's wife and children, and that any improvements made by the plaintiff thereon and expenses incurred therefor, should at the death of said Talcott accrue to the benefit of the plaintiff's wife and children ; that in reliance upon said promise and assur-

ance the plaintiff expended large sums of money on the permanent improvement of said real estate; that Talcott knew of this expenditure and knew that it was done in reliance upon his said assurance; that afterwards Talcott, by will, left all of his interest in said real estate to others, and has never in any way reimbursed the plaintiff for said expenditures; and that said conduct of Talcott was wrongful and fraudulent and injured the plaintiff to the amount of four thousand dollars. The complaint prayed for both legal and equitable relief in damages.

To this count the defendant demurred, the court overruled the demurrer, and by a bill of exceptions the question whether that decision was right is brought before this court.

On the trial below, for the purpose, among other things, of proving the allegations of the complaint as to said promise and assurances of Talcott, the plaintiff offered, in connection with other evidence, the declarations of Talcott made at divers times during the time the plaintiff was so expending money on said real estate improvements, and before and after Talcott's marriage, showing or tending to show " an understanding, as between Talcott and the plaintiff, that any expenditures the plaintiff might incur in the improvement of the property would be compensated by the property coming to the wife and children of the plaintiff, and that said Talcott knew that the expenditures made by the plaintiff were made because the plaintiff relied upon his promise as to such disposition of his property, and knowing this, permitted and encouraged the plaintiff to make such expenditures." To this evidence the defendant objected, on the ground that such declarations constituted a parol promise to devise real estate, and claimed that such promise was within the statute of frauds, and that evidence of it was inadmissible. The court excluded the evidence.

We will first consider whether the court erred in overruling the demurrer to the second count. The defendant says, in the first place, that this count sets forth no cause of action, inasmuch as the promise alleged, namely, to leave the real estate to the plaintiff's wife and children, is without con

sideration and void, and there is no allegation of any promise made by Talcott to pay any part of the expenses incurred by the plaintiff in making the improvements.

If the cause of action relied upon in this count is founded upon any promise or assurance of Talcott as a contract or agreement to so leave the real estate or to pay for part of the improvements, then this objection is well taken. No consideration for any such promise is stated, and upon the facts set forth it is difficult to see how one can be inferred. Indeed the cause of action seems based, in part at least, on the fact that the promise or assurance made by Talcott to the plaintiff was without consideration and could not therefore be enforced as a contract, either at law or in equity.

The question then, of consideration for the promise or assurance alleged, may be laid out of the case, because the right to recover, if any exists, does not depend upon that question. And this is also true of the objection that Talcott never promised to pay for any part of the improvements to the real estate. The action, so far as the count in question is concerned, is not founded upon any agreement of Talcott to pay for the improvements, as such. The plaintiff claims no damages for the breach of any such agreement, and is not seeking to enforce any such agreement, and therefore it was unnecessary to allege one. So far then as these objections are concerned the demurrer was properly overruled.

In the second place, the defendant says that if this count be regarded as founded upon the wrongful and fraudulent conduct of Talcott, still it is demurrable " because the allegations therein do not show any fraud." Of course it is never sufficient merely to allege fraud without setting forth the facts constituting the fraud. But here the facts as to the conduct of Talcott in the premises, and how that conduct has injured the plaintiff, are fully set forth. No actual fraud or evil design in making the promise and assurance is alleged, but if the facts stated bring the conduct of Talcott within the definition of what, for want of a better name, courts of equity call " constructive fraud," that is suffi-

cient, whether the word "fraud" be used or not. We think the second count states such a case. In many cases where a vendee of land has entered into possession, under a contract not enforceable by reason of the provisions of the statute of frauds, and in good faith has made valuable improvements thereon, and afterwards the vendor refused or was unable to convey, courts of equity have decreed specific performance, on the ground that to allow the statute to be set up in such cases "would amount to practising a fraud." Browne on Stat. of Frauds, §§ 437, 447, 448, and cases cited.

And a principle analogous to this is applied in cases of a parol promise to give lands, upon the faith of which possession is taken and improvements made, although in such cases there is no contract at all for the breach of which damages could be·given. Browne on Stat. of Frauds, § 491a; *Freeman* v. *Freeman*, 43 N. York, 34; *Kurtz* v. *Hibner*, 55 Ill., 514; *Hardesty* v. *Richardson*, 44 Md., 617; *Lee* v. *Carter*, 52 Ind., 342; *Story* v. *Black*, 5 Mont., 26.

And in such cases where, for any reason, courts of equity cannot decree specific performance, they will decree compensation to be made by the vendor to the vendee for the fair value of the improvements. Browne on Stat. of Frauds, §§ 119, 490; Bigelow on Fraud, 446; *Worth* v. *Worth*, 84 Ill., 442.

The principle applied in such cases is, that where one party by his contract, or his conduct outside of contract, which was well calculated to. mislead another relying thereon, does mislead him to his harm, and thereby obtains an unjust and unconscientious advantage over the latter, he will not be allowed to reap the benefit of his wrong doing. The cause of action in such cases is not the refusal to perform a contract, or keep a promise or engagement upon which another relied, but it is the consequent unjust infliction of loss or injury upon one party, and the consequent benefit and advantage resulting to the other, from the violation or breach of a faith and confidence which, under the circumstances, a court of equity deems to have been rightly

reposed in him. This principle is applicable to the case stated under the second count.

Upon the facts stated the decedent by his conduct gained an unjust advantage at the expense of the plaintiff. His retention or alienation to others of the land, with all its improvements, to the amount alleged of four thousand dollars, under the circumstances set forth, inflicts just as much loss and injury upon the plaintiff, and enriches the estate of the decedent just as much, as if such loss had been inflicted or advantage had been gained by the perpetration of a positive fraud. We think therefore that the demurrer to the second count was properly overruled.

This brings us to the second question, whether the court erred in rejecting the offered evidence. The objection made was, that the evidence would prove or tend to prove a parol promise to devise lands, which promise is, it was claimed, within the statute of frauds.

Whether such a promise is or is not within the statute we have here no occasion to discuss. For the purposes of the argument we will concede that the declarations of Talcott, which the plaintiff offered to prove, would constitute a parol promise to devise land, and that such a promise is within the statute.

Obviously, however, if we are right in what we have said as to the nature of this action, especially as stated in the second count, the object of it is not to enforce a contract at all, either at law or in equity. Had the plaintiff sought to recover damages for the breach of the promise to leave the real estate to his wife and children, or to have it enforced specifically, and had offered the evidence to prove such a contract for such a purpose, the objection, on the concession we have made, would have been well taken, if the action be regarded as one at law, and perhaps also if it be regarded as one in equity. The statute is just as binding in courts of equity as in courts of law, but if a refusal on the part of one party to carry out a parol contract will work a fraud upon the other, equity will protect the latter against the injustice. Bigelow on Fraud, 446 ; Browne on Stat. of Frauds, § 119.

And in such cases the party seeking the aid of a court of equity may always prove the parol agreement for the purpose of showing the fraud, whether it be actual or constructive. *Busick* v. *Van Ness*, 44 N. Jer. Eq., 82; *Walker* v. *Shackleford*, 49 Ark., 503.

But however this may be, in the case at bar the evidence ruled out was not offered to prove a contract for the purpose of having it enforced either at law or in equity, nor really to prove a contract at all. In offering it the plaintiff was merely attempting to show, as part of his cause of action, under the second count at least, what induced him to spend his money for permanent improvements on the land of another, and upon what conduct of the decedent he relied in so doing. In asking the aid of a court of law or of equity it was not enough for the plaintiff to show that he had expended his money for such permanent improvements with the knowledge or acquiescence of Talcott, or in the unfounded and unwarranted hope or expectation that Talcott would convey or devise the lands or suffer them to go by law to the plaintiff's wife and children. He must show that he made the expenditures solely or largely upon the faith of Talcott's conduct and assurances ; that under the circumstances he had a right to rely thereon, and that Talcott knew they were being so made. If he could show that his expenditures were so made, then it might follow, upon the other facts to be shown in the case, that the subsequent conduct of Talcott, by which he retained both the land and the value of the improvements as well, worked a fraud upon the plaintiff, and caused him loss and injury, for which a court of equity at least, taking account of all the circumstances as between the plaintiff and Talcott, would furnish him redress.

This would bring the case at bar clearly within the principle heretofore stated, which courts of equity apply in cases where there is no contract to convey, but only a promise to give land, in which case no action would lie upon the promise. As we have seen in such cases, if a party relying upon such a promise enters upon the land and makes permanent improvements thereon, even if solely for his own benefit,

and is afterwards turned out by the other party, a court of equity will decree fair compensation for the improvements, although in such case there might perhaps be no redress at law. See the authorities heretofore cited upon this point.

In the case at bar, so far as we can see from the pleadings and finding, Talcott never contemplated paying for any part of the improvements. Under these circumstances the plaintiff has perhaps no remedy at law, and, for aught we know, has no adequate and complete remedy without the aid of a court of equity.

We think he has such a remedy in equity, and that the second count of his complaint sets up an equitable cause of action. If upon the hearing it shall appear, as the defendant claims, that under all the circumstances the plaintiff has been more than repaid for all his expenditures upon Talcott's property, a court of equity can do full and complete justice between the parties and protect the interests of all concerned.

The plaintiff was entitled to the evidence offered and the court below erred in rejecting it.

The judgment is reversed, and a new trial is granted.

In this opinion the other judges concurred.