LEONARD J. FISCHER *vs.* MAX KENNEDY ET AL.

First Judicial District, Hartford, May Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

The contract for the purchase by the plaintiff of the defendants' farm provided that payment should consist in part of the proceeds of a mortgage to be obtained from the Federal Land Bank, and that, during the sixty days within which the agreement was to be performed, the plaintiff should take possession of the property in order to prevent further destruction and damage to it, make and pay for all necessary repairs and improvements, and procure insurance upon the premises. Following the refusal of the Federal Land Bank to make the contemplated loan, which occurred through no fault of the plaintiff, the parties orally waived the time limited for the completion of the contract and, for more than six months, treated the agreement as continuing in force, pending efforts to procure a substitute mortgage, all of which were unsuccessful with the exception of one offer made to the defendants who, having meanwhile conceived the intention of abandoning the contract and retaining the deposit already paid by the plaintiff, did not communicate it to him until it was too late to accept it, although the plaintiff was ready and willing to do so. Thereafter the plaintiff

brought the present action for specific performance of the contract, later amending his complaint to include a second count for the recovery of the deposit paid by him and the value of the services and materials furnished by him in the repair, maintenance and improvement of the farm. *Held:*

1. That the contract as orally modified could not be specifically enforced.

2. That the failure of the Land Bank loan—an event over which neither of the parties had any control—would have abrogated the contract by legal implication, if the parties had not themselves repelled the implication by their mutual understanding that the agreement should remain in force pending reasonable efforts to obtain another mortgage.

3. That, under the second count, the plaintiff was entitled to recover the reasonable value of his repairs and improvements on the farm, not as damages for breach of contract, but as reimbursement in the nature of a *quantum meruit* for the sums expended by him in reliance upon the contract and which, if retained by the defendants, would, in view of their unfair and unconscionable conduct toward the plaintiff in preventing performance of the contract, constitute an unjust and inequitable enrichment to them.

4. That until the filing of the second count by which the plaintiff first exercised his privilege to disaffirm the contract, it remained in force and his right to possession of the farm continued; and not until then did the defendants' right of action for possession of the premises, which they demanded by way of counterclaim, arise.

5. That the judgment in favor of the defendants for possession of the farm should be conditioned upon the payment by them to the plaintiff of all sums due him under the second count.

Argued May 3d—decided July 25th, 1927.

ACTION for specific performance of a contract for the sale of real estate and for damages, in which the defendants filed a counterclaim for the recovery of possession of the premises, brought to the Superior Court in Hartford County and tried to the court, *Nickerson, J.;* judgment for the plaintiff to recover the portion of the purchase price paid by him and for the defendants to recover possession of the premises, from which both parties appealed. *Error on both appeals.*

The plaintiff brought this action on July 7th, 1925, claiming specific performance of a contract for the sale of real estate, and for damages. On January 18th, 1926, a second count was added in which he set up that he had entered into the said contract with defendants and under the contract taken possession of the premises contracted to be conveyed, paid defendants $500 on account of the purchase price, and made improvements upon and expended considerable sums on account of said contract, and that defendants have renounced the contract and appropriated the value of plaintiff's labor, materials and services, and refused to pay for the same, and have retained and still retain the earnest money paid under the contract notwithstanding the repeated demands of plaintiff. The court found the issues for the plaintiff and rendered judgment for the plaintiff for the return of the $500 and for the defendants for the possession of the premises which plaintiff had held since the making of the contract.

The court found these facts: On September 2d, 1924, the parties entered into a contract in which the defendants agreed to sell and the plaintiff to buy of the defendants certain property, together with the buildings and improvements thereon, for $17,000, to be paid by the plaintiff (1) by the payment of $500 on account of the purchase price, (2) by the amount of the mortgage he should be able to obtain from the Federal Land Bank, (3) by a second mortgage to the defendants for the balance of the purchase price, which should cover the land with all buildings and improvements thereon and all stock and farm implements placed upon said premises by the plaintiff. The plaintiff was to pay interest semiannually at six per cent and one per cent on the principal, and to pay the whole of the principal within five years, or earlier at his

option. The contract was to be completed within sixty days.

The parties mutually agreed that the plaintiff should take possession of the premises upon the execution of the contract for the purpose of preventing further destruction and damage to them, and for the purpose of making necessary repairs and improvements; they further agreed that all money expended in the repair, alteration and improvement of the premises should be paid by the plaintiff, who should also insure all buildings, stock, machinery, tools, hay, straw and grain. At the time the contract was executed the plaintiff paid defendants the $500, and entered into possession of the premises under the terms of the agreement. The plaintiff at once applied to the Federal Land Bank for a loan upon the farm. On October 28th, 1924, the bank declined to make the loan. While waiting for the decision of the bank, the plaintiff purchased and placed on the premises the stock and farm implements provided for in the contract. From the time he took possession of this farm until the time of this action plaintiff cared for and protected the property. Under the contract he made important and extensive repairs to the buildings which were reasonably necessary. He bought large quantities of feed for the stock purchased by him and he placed the manure from the livestock on the farm. The farm was in such a run-down condition that it furnished no hay, and under the contract he could not have cut it since the contract provided that he was to take possession only for the purpose of making necessary repairs and of preventing further destruction and damage to the premises. Unless the buildings were occupied defendants could not obtain or keep insurance thereon. This was the chief inducement which caused the defendants to provide for the

occupancy of the premises by the plaintiff until the termination of the contract. The refusal of the bank to make the loan was immediately communicated to the defendants, and thereafter the parties met and orally waived the time limited for the completion of the contract, and other terms and conditions and proposals were discussed from time to time with a view to carrying out the contract.

Different proposals and counter proposals in relation thereto were made, both parties treating the agreement as continuing in force. The plaintiff in good faith, and with the full knowledge and consent of the defendants, made a number of efforts to procure a first mortgage loan on the farm, but none of these were to the satisfaction of the defendants. On May 12th, 1925, the plaintiff wrote defendants requesting that they do something regarding the matter of carrying out the contract as the season was advancing, and requesting that they meet him for the purpose, but defendants made no reply to this letter. On June 3d, 1925, plaintiff and defendants went to Middletown, and at their instance one Jones agreed to see what he could do in securing a loan and to notify them. On June 8th, 1925, Jones wrote defendant Kennedy that the best that could be done on the first mortgage loan was $5,000 or $6,000, and if Kennedy could handle the proposal to let him know. Kennedy received the letter, but did not show plaintiff the letter until June 18th, and did not do anything in relation to it. On June 19th, 1925, plaintiff wrote defendants stating that he was ready and willing to pay the expenses connected with obtaining the Jones mortgage and that unless defendants performed their part of the contract on or before July 1st he would take steps to enforce it. Defendants made no reply to this letter, and on July 7th, 1925, plaintiff began this

action. The conduct of defendants in connection with the Jones loan resulted in a failure to obtain that loan. Defendants' conduct was intentional and for the purpose of preventing the plaintiff from obtaining that loan. They did not intend, in May and June, 1925, to carry out their part of this contract. They had determined during this period to keep plaintiff's $500 and to sell the premises as soon as they could procure another purchaser. They have never returned the $500.

The trial court held that defendants have had the advantage of all the plaintiff has done on the premises which far exceeds any rental value the defendants could have obtained for the farm. Up to the time of the commencement of this action plaintiff was ready and willing to complete the agreement on his part and could have done so had the defendants acted fairly with him in connection with the procuring of a first mortgage on the premises.

The court concluded that: "The plaintiff occupied the premises and performed the labor and furnished the things he did under the terms of the contract, and he cannot now recover the value of the same from the defendants. The terms of the contract govern the use and occupancy of the premises by the plaintiff, and he cannot recover of the defendants in this action the value of, or money expended in repairs, alterations and improvements made under that agreement."

*George W. Crawford,* for the appellant (plaintiff).

*Frederick B. Hungerford,* for the appellants (defendants).

WHEELER, C. J.   The trial court was right in holding that specific performance cannot be decreed. *Malkan* v. *Hemming,* 82 Conn. 293, 73 Atl. 752. The court

was also right in holding, upon the facts found, that the original contract was continued by the mutual consent of the parties. Both parties, it appears, treated the contract as continuing in force, waived the sixty-day contract limit for the completion of the contract, from time to time discussed terms and conditions with a view to carrying out the contract, and the plaintiff, with the knowledge and consent of the defendants, with a view to completing the executory contract by adding the missing term, made a number of efforts to procure a first mortgage loan, but none of his efforts satisfied the defendants. Both parties engaged Jones to procure a first mortgage, but when he secured someone willing to loan $5,000 or $6,000, the defendants refused to consider it and as a result of their conduct the failure to obtain the loan ensued. The defendants' conduct in failing to give prospective mortgagees consideration during the months of May and June was also a result of their decision not to carry out the contract. Both parties to the contract undoubtedly anticipated that a first mortgage would be secured from the Federal Land Bank. The executory contract had been made upon this assumption. When it failed to materialize, either party had the right to treat the contract as at an end; neither could have enforced it against the other. 3 Williston on Contracts, §§ 1544, 1559, 1570.

There was no express agreement as to a termination. When an executory contract cannot in its then form become an executed contract through the happening of an event over which neither party had any control, the law will imply that it is abrogated, unless the facts repel this implication. 13 Corpus Juris, 640, note 74; Marks Realty Co. v. "Churchills," 153 N. Y. Supp. 264. After the Federal Land Bank refused to make the loan, the parties treated the contract as continuing

—the plaintiff to continue in possession of the farm under the same arrangement as that defined in the contract—and both parties understanding that he was to secure a first mortgage in place of the Federal Land Bank mortgage which should be satisfactory to the defendants. During the entire period, both the two months prior to the Federal Land Bank decision, and from this period to the beginning of this action, the plaintiff continued to make expenditures upon these premises with the knowledge of the defendants that the plaintiff was doing this in the expectation that the loan would be obtained and the contract be carried out, and during the last two months the defendants permitted the plaintiff to continue these expenditures when all of the time they had determined not to carry out the contract and to refuse to accept the first mortgage which plaintiff was endeavoring to obtain. Defendants' conduct was deceitful in the extreme, and worked a hardship and pecuniary loss upon the plaintiff. Moreover, while they determined to not carry out the contract the defendants have been enriched by the plaintiff's labor, material and expenditures on the farm, and these far exceed all the rental value of the farm during the period of plaintiff's occupancy. The contract while complete in its terms was executory because it could not go into effect until the mortgage from the Federal Land Bank was obtained. After that time it continued to remain executory pending the securing by the plaintiff of a first mortgage acceptable to defendants. The executory contract was not terminated when plaintiff brought this action for specific performance and he was justified in his course by the conduct of the defendants who had not for two months intended to carry out the contract. The defendants' breach made the course plaintiff took a just and legal one.

Fischer *v.* Kennedy.

The trial court held that the plaintiff could not recover for the moneys expended upon these premises, since the terms of the contract govern their use and occupancy and do not permit such recovery. It is true the contract does provide that all moneys expended in repair, alteration and improvement shall be paid by the plaintiff; this provision merely refers to the conditions which will exist when the contract is carried out, so that the plaintiff may not require the defendants to pay them when the first mortgage is obtained and the contract is in force. The cause of action under the second count is not one for the breach of this contract; it is one to recover for the loss which the plaintiff has incurred as a result of making these expenditures, which have enriched the defendants through plaintiff's reliance upon their course of conduct leading him to believe that defendants would accept another first mortgage and would carry out the contract. Equity will not permit one to enrich himself at the expense of another in any such way. When specific performance fails, the action at law is a personal one upon a *quantum meruit* to recover for the expenditures so made. It is sometimes referred in courts of law to the fiction of "implied contract" resorted to to account for the existence of certain equitable rights and liabilities; really, says Pomeroy's Equity Jurisprudence, Vol. 3 (4th Ed.) § 1238, "they arise wholly from considerations of right and justice, and from the application to particular conditions of fact of those maxims which lie at the foundation of equity jurisprudence." The remedy is often availed of where one, in reliance upon a parol agreement to convey land, takes possession of the land and makes improvements upon it. If the agreement be unenforceable, the vendor will be required to pay the vendee the reasonable value of the improvements in an action

upon a *quantum meruit*, otherwise the vendor would be enriched at the expense of the trusting vendee.

Upon the same principle a like action is given the one who enters into possession of land and makes valuable improvements thereon upon the promise of the owner to compensate him in his will which he fails to do. In *Wainwright* v. *Talcott*, 60 Conn. 43, 52, 22 Atl. 484, we state the applicable principle in these words: "The principle applied in such cases is, that where one party by his contract, or his conduct outside of contract, which was well calculated to mislead another relying thereon, does mislead him to his harm, and thereby obtains an unjust and unconscientious advantage over the latter, he will not be allowed to reap the benefit of his wrong doing. The cause of action in such cases is not the refusal to perform a contract, or keep a promise or engagement upon which another relied, but it is the consequent unjust infliction of loss or injury upon one party, and the consequent benefit and advantage resulting to the other, from the violation or breach of a faith and confidence which, under the circumstances, a court of equity deems to have been rightly reposed in him." See also *Grant* v. *Grant*, 63 Conn. 530, 543, 29 Atl. 15.

In discussing this principle MR. JUSTICE BALDWIN says in *Ensign* v. *Batterson*, 68 Conn. 298, 307, 36 Atl. 51: "In ordinary cases at the present time, a mortgagee in possession is not thus permitted to profit by improvements made without the acquiescence of the party seeking to redeem; but it is often equitable that he should be, when he acted in the honest, though mistaken, belief that he was the absolute owner, with an unincumbered title. In the Roman law, this equity was deemed so clear, that if the real owner brought suit for the land, while refusing to allow for the added value which the betterments had given it, this was

treated as a fraud on his part, which justified the court in rejecting his demand. Dig. 41, 1, *de acquirendo rerum dominio*, 7, § 12. American law, without either imputing fraud, or requiring proof of it, is content with holding it inequitable to allow a man to be enriched under such circumstances by expenditures which another has made, as he supposed, for his own benefit, while acting in good faith and in ignorance of any adverse claim or title."

There is no difference in principle between the case of a parol contract to convey land in reliance upon which possession has been taken and improvements made, and a case where possession is taken under an executory contract for the sale of land and, when one term of the contract becomes unenforceable through no fault of the parties to the contract, the parties agree to waive the time limit for completion of the contract, and to treat the contract as a continuing one, and then to endeavor to provide a substitute for the unenforceable term, and meantime the vendee, with the knowledge and consent of the vendor, continues to make expenditures in improvements upon the premises during the period of occupancy until the vendor refuses to carry out the contract and is intent upon enriching himself by securing possession of the premises with the improvements placed thereon by the vendee. In the one case the contract was *ab initio* legally unenforceable; in the other one of the terms became in fact unenforceable, but it was entirely probable that a substitute term might be supplied, that is, another first mortgage obtained, and in that situation the parties treated the contract as a continuing one and endeavored to supply the missing term and while the contract continued defendants deceitfully and intentionally determined to prevent the completion of the contract for the purpose of enriching themselves by appropriating

the earnest money plaintiff had paid in and the improvements to the premises he had made. If equitable principles intervene, by the action of *quantum meruit* in the first case to prevent the wrong, they will in the second, especially when the wrong committed is intentional and savors of fraud. It can make no difference whether there be a definite agreement defining the new term which the vendor agrees to accept, or whether there is merely an agreement that the contract shall continue and that the vendee shall endeavor to secure the substitute for the missing term of the contract which shall be acceptable to the vendor. If the vendee in either case, in reliance upon the completed or the incompleted executory contract, makes expenditures for improvements upon the premises the vendor must, upon his prevention of the carrying out of the contract, reasonably reimburse the vendee for his expenditures, not because of the contract relation, but because he may not enrich himself by such unjust and unconscionable conduct at the expense of the vendee. The plaintiff made his expenditures in reliance upon the defendants' fairness and reasonableness in accepting the new term and thus completing and carrying out the contract. Conduct of the vendee which "was calculated to mislead the grantee and does mislead him to his harm" and from which the vendor will reap a benefit will not be permitted to succeed in giving to the vendor this "unjust and unconscientious advantage." The remedy for the prevention of the wrong which the law gives is that of a *quantum meruit* to recover the fair value of the benefits conferred upon the vendor less any benefits which have accrued to the vendee. *Wainwright* v. *Talcott*, 60 Conn. 43, 52, 22 Atl. 484; *Grant* v. *Grant*, 63 Conn. 530, 542, 543, 29 Atl. 15; *Dix* v. *Marcy*, 116 Mass. 416, 418.

The facts found leave no room for question that the

defendants reached the determination early in May not to carry out the contract and that their course of conduct from that time on was without legal excuse and justified the plaintiff in not continuing in the fruitless effort to secure a first mortgage acceptable to the defendants.

The suggestion is made that the contract terminated upon the Federal Land Bank's refusal to make a loan and that the continued occupancy of the plaintiff was under an agreement extending the terms of the contract pending negotiations for a new contract. Then it is said that until the right to occupy is terminated no implied contract to pay for use and occupancy can arise. If the contract has terminated it is difficult to see how its terms can be extended. The legal fact is the contract never terminated; the finding makes this doubly clear. We are not concerned in this action with finding an implied contract to pay. We are concerned only in finding whether the defendants have inflicted an unjust and unconscionable wrong upon the plaintiff; if so, the law upon equitable principles will, so far as it can, make good the loss he has unjustly suffered.

The defendants could not have recovered under their counterclaim as originally filed; it was saved by the amendment suggested by the court, which was that the agreement has been terminated and plaintiff has since wrongfully continued in the possession of the premises, and prayed for the possession of the premises. Under the facts found, the executory agreement could have been terminated on account of the conduct of the defendants in May, 1925. The bringing of this action did not constitute a termination of the executory contract. The action of the plaintiff was for specific performance in reliance upon the continued existence of the contract. Until the plaintiff filed his

second count, seeking to recover on a *quantum meruit,* he had done nothing to put an end to his right of possession. The foundation of that action under that count was a termination of the contract and thereafter the defendants were justified in seeking the remedy of ejectment without previous demand based upon such termination. *Catlin* v. *Washburn,* 3 Vt. 25, 40. It was not until they filed their amendment to the counterclaim that they were entitled to maintain their claim of ejectment. The court was correct in rendering judgment on the counterclaim giving defendants possession of the premises, but we think the judgment of possession should have been conditioned upon the payment of the judgment in favor of the plaintiff. While plaintiff can only collect on his judgment once, the judgment should make the prompt payment of that judgment a certainty. *Staley* v. *Murphy,* 47 Ill. 241.

There is error on both appeals, and the cause is remanded to the Superior Court for the assessment of damages and for the rendition of judgment in accordance with this opinion.

In this opinion HAINES, HINMAN and BANKS, Js., concurred.

MALTBIE, J. (dissenting). If the trial court had found that, after the failure to secure the Federal Land Bank mortgage, there was a subsisting contract between the parties for the purchase of the land, or if this were necessarily implied in the facts it has found, there would be much force in the reasoning of the majority opinion. But neither of these situations exists. There was no time, after the failure to secure that loan, when the plaintiff could demand of the defendants that they accept any particular mortgage; there was no time when the minds of the parties met

upon the very vital provision as to the nature or amount of the mortgage which would be satisfactory to the defendants. The real relations of the parties after the failure of the Federal Land Bank mortgage, are very clearly apparent from the finding: The plaintiff continued in possession under the same arrangement as that specified in the written contract, in the expectation that he would ultimately be able to secure a mortgage which would prove satisfactory to the defendants; he was not in possession under a contract, but in the hope that he would be able finally to consummate one.

To such a situation the doctrine of "unjust enrichment" has no proper application. No doubt that doctrine has its proper place in the law, but there is much force in Page's characterization of it as a doctrine "which is so broad as to include almost any case in which unfair dealing appears and so vague as to give no help in solving cases as they arise"; 3 Page on Contracts, p. 1503; and there is this danger in it, that it affords a continual temptation to courts to stray from the rules of law in an attempt to do abstract justice in a particular case. In the instance case, the terms of the written contract which had to do with the occupancy of the premises by the plaintiff, and which continued throughout to characterize that occupancy, make it clear that he never expected to be remunerated for the things he did upon the farm, just as he never expected to pay rental for it; and on the other hand, it is clear that the defendants never contemplated paying him for what he did or receiving rental from him. In such a situation, the law will not imply a promise that either make compensation to the other. *Beers* v. *Boston & Albany R. Co.*, 67 Conn. 417, 425, 34 Atl. 541. The plaintiff voluntarily expended the labor and furnished the materials in the hope that ultimately

they would redound to his own benefit, and that he has been disappointed in that hope will not cast upon the defendants the burden of compensating him. *Gillette's Appeal,* 82 Conn. 500, 502, 74 Atl. 762. Similarly, there is nothing in such a situation upon which the law can build an implied promise upon the part of the plaintiff to pay for use and occupancy. *Vandeheuvel* v. *Storrs,* 3 Conn. 203, 208; *Winterbottom* v. *Ingham,* 7 Ad. & El. 611, 618; *Bishop* v. *Clark,* 82 Me. 532, 534, 20 Atl. 88; *Mariner's Admr.* v. *Burton's Admr.,* 4 Har. (Del.) 69; *Dwight* v. *Cutler,* 3 Mich. 566, 573; *Newby* v. *Vestal,* 6 Ind. 412.

The purpose of the defendants not to carry out the arrangement with the plaintiff for the purchase of the farm, but to use him merely as a means of keeping it occupied until they could find some other purchaser, is limited by the finding to a period of about two months before the bringing of the action. If that gave rise to a cause of action by the plaintiff, it was not one within the purview of the issues in this case.