LASER CONTRACTING, LLC *v.* TORRANCE FAMILY
LIMITED PARTNERSHIP ET AL.
(AC 28802)

Lavine, Beach and Peters, Js.

Argued March 13—officially released June 3, 2008

*Brian B. Staines*, for the appellants (defendants).

*Frank J. Liberty*, for the appellee (plaintiff).

*Opinion*

PETERS, J. With limited exceptions, the Home Improvement Act, General Statutes § 20-418 et seq., makes a home improvement contract that is not in writing unenforceable in an action either for breach of contract or for unjust enrichment. *Barrett Builders* v. *Miller*, 215 Conn. 316, 322, 576 A.2d 455 (1990). The principal issue in this case is whether the services performed by a contractor in installing a modular home at a new site and in making improvements to the newly installed home qualify for the statutory exception for contracts for the construction of a new home. General

Statutes § 20-419 (4) (A). Relying on the fact that the contractor's services preceded the issuance of a certificate of occupancy for the modular home, the trial court held the exception to be applicable and also resolved other remaining issues in favor of the contractor. We affirm the judgment of the trial court.

On June 30, 2003, the plaintiff, Laser Contracting, LLC, filed a multicount complaint against the defendants, Torrance Family Limited Partnership and Jeffrey Torrance, to recover for services rendered in conjunction with the removal of a modular home from East Lyme and its attachment to a new foundation at 120 Rattlesnake Ledge Road, Salem.[1] The defendants filed a general denial and a special defense based on the Home Improvement Act.[2] After a trial to the court, the court rendered judgment on behalf of the plaintiff on its claims of breach of contract and unjust enrichment and awarded damages of $45,398.27 as well as interest in the amount of 10 percent a year pursuant to General Statutes § 37-3a.[3]

The memorandum of decision of the trial court contains the following findings of fact. The defendants hired the plaintiff to prepare a modular home for its removal to a newly poured foundation at 120 Rattlesnake Ledge Road, Salem, and to perform services required to make the home functional at its new location. Subsequently, Scott Weston, the sole member of the plaintiff limited liability company, entered into an agreement to purchase the Salem property from the

---

[1] The complaint alleged (1) breach of an oral contract, (2) violation of the implied covenant of good faith and fair dealing, (3) violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and (4) unjust enrichment.

[2] Although the defendants also filed a claim for setoff, the trial court found this defense to have been abandoned at trial. The defendants have not contested the court's ruling.

[3] The plaintiff has not appealed from the court's denial of the second and third claims for recovery.

defendants at a price based on the combined costs of the lot, the modular home, the relocation and improvements made prior to purchase. In reliance on this agreement, the plaintiff incurred expenses to make further improvements to the home. The agreement could not, however, be performed as originally drafted because the defendants did not yet own the underlying lot on the stated closing date of November 1, 2002. They did not obtain title to the lot until December 31, 2002. The parties' subsequent negotiations for a formal purchase and sale agreement were unsuccessful, and the defendants sold the property to a third party purchaser. Before doing so, the defendants were required to pay $42,076.94 for the release of mechanic's liens for services performed by the plaintiff. They maintained that they incurred a net loss of $9498 on the sale to the third party.

In light of these findings, the court rejected the defendants' argument that, because no written contract was provided pursuant to the Home Improvement Act, they had no duty to pay the plaintiff for the services rendered and materials installed. Instead, the court concluded that the defendants' offer to sell the property to Weston had induced the plaintiff to perform additional improvements to the property. Without differentiating between the plaintiff's claims for breach of contract and unjust enrichment, the court awarded the plaintiff a total of $45,398.27.[4]

The defendants' appeal raises three principal issues. As a matter of statutory law, they challenge the validity of the court's conclusion that the Home Improvement Act did not bar the plaintiff's recovery. As a matter of substantive law, they contend that the court improperly held them liable both for breach of contract and for

---

[4] The defendants did not file a motion for articulation asking the court to clarify the basis for the court's monetary award. Practice Book § 66-5.

unjust enrichment. As an evidentiary matter, they contest the propriety of the court's holding both defendants liable to the plaintiff. Although we agree in part with the defendants' second claim, we nonetheless affirm the judgment in favor of the plaintiff.

I

## THE HOME IMPROVEMENT ACT

As a general rule, a home improvement contract is not enforceable against a homeowner unless the contract complies with the writing requirements of the Home Improvement Act, General Statutes § 20-429. *Barrett Builders* v. *Miller*, supra, 215 Conn. 322; *New England Custom Concrete, LLC* v. *Carbone*, 102 Conn. App. 652, 659, 927 A.2d 333 (2007). In this case, the plaintiff argued, and the trial court found, that the services performed by the plaintiff fell within the statutory exception for contracts for "[t]he construction of a new home . . . ."[5] General Statutes § 20-419 (4) (A). In their appeal, the defendants maintain, as they did at trial, that the exception is inapplicable. We agree with the trial court in ruling to the contrary.

The principal precedent on which the defendants rely is *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 657 A.2d 1087 (1995), in which our Supreme Court held the Home Improvement Act to be applicable to the construction of a swimming pool concurrently with the construction of a new home. *Rizzo Pool Co.* expressly relied on the fact that the pool installation contract was "completely separate and distinct" from the new home construction and involved unrelated contractors. Id., 677. The defendants here claim that, analogous to *Rizzo Pool Co.*,

[5] Because we hold this statutory exception applicable, we need not address the validity of the trial court's alternate holding that the defendants were not "owners" entitled to invoke the provisions of the Home Improvement Act because, at the time of the plaintiff's performance, the defendants had not yet obtained title to the underlying property.

the trial court's finding that described the plaintiff's services as "repairs, alterations and upgrades" denotes the court's implicit determination that the services amounted to home improvements that were separate and distinct from the modular home's original construction.

We must decide two issues: whether the court properly found that relocation of the house to Salem constituted new construction and, if so, whether the services undertaken by the plaintiff after the defendants' agreement to sell the property to Weston qualified as separate and distinct home improvements, as in *Rizzo Pool Co.* Our resolution of these issues requires us to determine whether the court's explicit and implicit findings of fact were clearly erroneous. See Practice Book § 60-5; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 219–22, 435 A.2d 24 (1980).

The court record and the memorandum of decision establish the factual basis for the court's finding that "the [mobile] home was new to the lot, and work [was required to qualify for] a certificate of occupancy."[6] Prior to any work on the Salem property, the former owner of the lot and the defendants entered into a purchase and sale agreement that included a provision requiring the seller to apply for a building permit. The permit was granted under a *new home* construction license,[7] as opposed to a *home improvement* license. Upon its purchase and relocation,[8] the modular house

---

[6] A certificate of occupancy was first issued on February 24, 2003, more than nine months after construction work had begun and after the plaintiff had ceased work on the property.

[7] No issue has been raised under the New Home Construction Contractors Act, General Statutes § 20-417a et seq., either in the trial court or in this court.

[8] Though not dispositive of the Home Improvement Act defense, the bill of sale representing the defendants' purchase of the East Lyme structure is more indicative of a sale of a chattel than of a real estate transaction. Under the Uniform Commercial Code, " 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . . ." U.C.C. § 2-105 (1) (1998); see also General Statutes § 42a-2-105 (1). Accordingly, other courts have traditionally classi-

was uninhabitable and in need of electrical, plumbing and heating services. A new basement, septic system, well, garage and driveway were constructed where none previously had existed. In sum, the project involved the construction of a new home, albeit with a used part. The trial court therefore properly found that the statutory exception governed the installation of the modular home on the Salem property.

The more difficult question that remains is whether the specific "repairs, alterations and upgrades" to the modular home that the plaintiff performed *after* Weston's agreement to buy the property equally qualify as home improvements under *Rizzo Pool Co.* Our Supreme Court's opinion in *Rizzo Pool Co.* is again illuminating. As previously noted, in that case the pool installation contract involved services that were physically separate and distinct from the new home construction, and performed by separate unrelated contractors. *Rizzo Pool Co.* v. *Del Grosso,* supra, 232 Conn. 677. In addition, the pool contract contained no indication that the pool was to be installed at any particular stage of the new home construction or even that it was to have been installed prior to the completion of the new home. Id., 677–78. By contrast, the record in this case shows that the plaintiff's services after the defendants agreed to sell Weston the property were not separate and distinct from the underlying project of reassembling and preparing a modular home for resale at a new location. At trial, Torrance testified: "[M]y agreement with Mr. Weston had to do with him taking over the project, completing the construction and completing the house." Unlike the situation in *Rizzo Pool Co.,* then, not only was the contractor always the same entity, but the services it

fied modular homes to be "goods" under the Uniform Commercial Code. See *Cates* v. *Morgan Portable Building Corp.,* 591 F.2d 17, 20 (7th Cir. 1979); *Stephenson* v. *Frazier,* 399 N.E.2d 794, 797 (Ind. App. 1980); *Joswick* v. *Chesapeake Mobile Homes, Inc.,* 362 Md. 261, 266–67, 765 A.2d 90 (2001).

performed consistently served the parties' common goal of completing the house for resale. We conclude, therefore, that the trial court's finding that the plaintiff's services fell within the scope of the new construction exception to the Home Improvement Act was not clearly erroneous.

## II

## BREACH OF CONTRACT AND UNJUST ENRICHMENT

In their alternate arguments for reversal of the judgment of the trial court, the defendants maintain that the trial court improperly rendered judgment in favor of the plaintiff on the plaintiff's claims of breach of contract and unjust enrichment. This argument has two parts. The defendants maintain that (1) they never entered into an enforceable contract with the plaintiff and (2) they cannot be held liable for both breach of contract and unjust enrichment. Although we agree in part with the defendants' second argument, we need not address the merits of their contract claim because the judgment can be sustained on the ground of unjust enrichment.

The defendants maintain that, as a matter of law, it was improper for the trial court to render judgment in favor of the plaintiff both on its claim of breach of contract and on its claim for unjust enrichment. Although the defendants have not brought to our attention any effort on their part at trial to have the plaintiff undertake an election of remedies, they nonetheless are correct that they cannot be held liable simultaneously for breach of an express contract and an implied in law contract governing the same subject matter. *Meaney* v. *Connecticut Hospital Assn., Inc.*, 250 Conn. 500, 517, 735 A.2d 813 (1999); 1 E. Farnsworth, Contracts (2d Ed. 1998) § 2.20, p. 176. The trial court, therefore, should not have rendered judgment in favor of

the plaintiff on both the first and fourth counts of the plaintiff's complaint.

We may, nonetheless, affirm the judgment against the defendants if we conclude that the plaintiff established one of its claims, namely, its claim of unjust enrichment. As recently restated by our Supreme Court, "[u]njust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy." (Internal quotation marks omitted.) *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 573, 898 A.2d 178 (2006).

Appellate appraisal of a trial court's finding of unjust enrichment is governed by the well established principle that "the determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings for the trial court that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion

of the trial court." (Citations omitted.) *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 283, 649 A.2d 518 (1994).

Our review of the record persuades us that, in this case, the court properly rendered an equitable judgment in favor of the plaintiff on the basis of unjust enrichment. The parties do not dispute the court's findings that the individual defendant, who was the senior partner of the defendant partnership, proposed selling the house and the land to Weston at a time when he knew that the partnership did not yet own the real property. In the months subsequent to this proposal, the plaintiff continued to make improvements to the property and was observed to be doing so by the individual defendant. This evidence supported the court's implicit finding that the defendants acquiesced in the performance of the plaintiff's services. Weston's interest in purchasing the property was frustrated by the parties' inability to agree on subsidiary terms of a formal purchase and sale agreement. In light of this record, the trial court properly could conclude that the defendants unjustly enriched themselves by selling the improved property to a third party without fully compensating the plaintiff for the enhancement in the value of the property that was attributable to the valuable services rendered by the plaintiff.

Case law also supports the trial court's findings in this case. In *Wainwright* v. *Talcott*, 60 Conn. 43, 22 A. 484 (1891), our Supreme Court reviewed a complaint in which the plaintiff allegedly had been assured that his family would inherit the defendant's property. Although the defendant had acquiesced in the plaintiff's improvements to the property, he ultimately devised the improved real estate to another party.[9] Id., 49–50. Identifying the principle animating the complaint, our

[9] In his complaint, the plaintiff, William Wainwright, alleged that the defendant, John L. Talcott, had "assured and promised the plaintiff that upon his, John L.Talcott's, death, his interest in said real estate should go to the

Supreme Court stated: "The cause of action in such cases is not the refusal to perform a contract, or keep a promise or engagement upon which another relied, but it is the consequent unjust infliction of loss or injury upon one party, and the consequent benefit and advantage resulting to the other, from the violation or breach of a faith and confidence which, under the circumstances, a court of equity deems to have been rightly reposed in him." Id., 52–53.

More recently, our Supreme Court reviewed a case in which the defendant offered and agreed to sell a residential property to his nephew, the plaintiff, when the defendant reached retirement age. *Misisco* v. *La Maita*, 150 Conn. 680, 681–82, 192 A.2d 891 (1963). Although the nephew made substantial alterations and improvements to the property in reliance on his uncle's assurances, the defendant repudiated the agreement. Id., 682. Our Supreme Court stated: "The cause of action . . . is to recover for the loss which the plaintiff has incurred as a result of making, to the enrichment of the defendant, expenditures for and the improvements to the property in reliance on a course of conduct by the defendant which led the plaintiff to believe that the defendant would sell the property to him. . . . It is an action in quasi contract, i.e. an obligation, arising by law, on which the same remedy is given as would be given if the obligation arose out of contract. . . . Although the right of recovery is based on equitable principles, it is nevertheless an action at law, the purpose of which is to prevent unjust enrichment. . . .

plaintiff's wife and children, and that any improvements made by the plaintiff thereon and expenses incurred therefor, should at the death of said Talcott accrue to the benefit of the plaintiff's wife and children; that in reliance upon said promise and assurance the plaintiff expended large sums of money on the permanent improvement of said real estate; that Talcott knew of this expenditure and knew that it was done in reliance upon his said assurance; that afterwards Talcott, by will, left all of his interest in said real estate to others and has never in any way reimbursed the plaintiff for said expenditures . . . ." *Wainwright* v. *Talcott*, supra, 60 Conn. 49–50.

The only remedy is in an award of money damages." (Citations omitted.) Id., 683–84.[10]

These precedents illuminate the present case and reinforce our conclusion that the trial court properly awarded money damages on the basis of unjust enrichment to the plaintiff, whose self-interested expenditures, made in reliance on the defendants' assurance to sell Weston the property, proved to have benefited the defendants.

As a final matter, the defendants argue on appeal that the court could not have awarded restitution on the basis of unjust enrichment because they were not enriched by the services performed by the plaintiff. They cite the fact that the third party sale resulted in a net loss of $9498 and that this loss was exacerbated by their obligation to pay $42,076.94 toward the payment of mechanic's liens for services performed by the plaintiff.

A trial court's determination of the exact amount of recovery under the unjust enrichment doctrine is a question of fact. *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, supra, 231 Conn. 283. To obtain review of the propriety of such an award, a litigant must provide us with a record of the underpinnings of the court's decision. In this case, the court did

---

[10] This reasoning also was articulated in the Restatement of the Law of Restitution: "A person who has rendered services to another or services which have inured to the benefit of another or who has affixed chattels to the land or chattels of another is entitled to restitution therefor if the services were rendered or the chattels were affixed . . . (b) to obtain the performance of an agreement with the other therefor, not operative as a contract, or voidable as a contract and avoided by the other party after the services were rendered, the one performing the services erroneously believing because of a mistake of fact that the agreement was binding upon the other . . . ." Restatement, Restitution, Quasi Contracts and Constructive Trusts § 40, p. 155 (1937). "A person who has acquired an interest in land or chattels as the result of an agreement with the owner made under a mistake of fact and avoided by the owner is entitled to restitution for the value of services rendered in their preservation or in making appropriate improvements thereon." Id., § 42 (3), p. 167; see also id., § 170 comment (a), p. 689.

not make specific factual findings either with respect to the plaintiff's costs or with respect to the benefits conferred on the defendants. The defendants did not seek an articulation of the basis for the court's award. See Practice Book § 66-5. On this record, we have no basis other than speculation to review the court's determination.[11] Accordingly, we decline to review this claim. See *Newtown Pool Construction, LLC* v. *Errico*, 103 Conn. App. 566, 571, 930 A.2d 50 (2007).

### III

### LIABILITY OF THE DEFENDANT PARTNERSHIP

The court awarded the plaintiff a remedy both against Torrance and against the Torrance Family Limited Partnership. The partnership maintains that the trial court improperly denied its motion for dismissal on all counts of the plaintiff's complaint for failure to make out a prima facie case. The partnership bases this contention on two arguments. As a matter of pleading, it alleges that it improperly was held liable on the plaintiff's claim of unjust enrichment because the plaintiff's posttrial brief did not expressly refer to the partnership's potential liability.[12] As a matter of proof, it alleges that the record establishes that the plaintiff dealt only with the individual defendant and not with the partnership defendant. We disagree.

The trial court implicitly found that Torrance, in conducting the negotiations with Weston, was acting as an agent of the Torrance Family Limited Partnership. That

---

[11] Because the court rendered damages of $45,398.27 plus interest, we could conclude that it agreed with the plaintiff's claim that the defendants' recovery from the third party purchaser was enhanced by the value of the improvements to the property that Weston had undertaken.

[12] The defendants also fault the trial court's judgment on the ground that the plaintiff, in its posttrial brief, did not specifically argue its contract and unjust enrichment claims. In the absence of a rule of practice that, as a prerequisite to adjudication, requires a party to articulate every claim from its pleadings in its posttrial brief, this argument lacks merit.

finding was supported by evidence that the checks issued to purchase both the modular home and the lot on which the modular home was placed were drawn on a partnership account. Furthermore, the partnership was identified as the operative party in the documents attendant to the sale of the property to the third party purchaser. Finally, the partnership does not dispute the fact that the individual defendant was its principal partner. Because these findings of fact were not clearly erroneous, the court's decision to hold the partnership liable for unjust enrichment must be sustained.

The judgment is affirmed.

In this opinion the other judges concurred.